Argued April 26; affirmed May 15, 1934

# SECURITY SAVINGS & TRUST CO. *v.* COMMERCIAL CASUALTY INSURANCE CO.

### (32 P. (2d) 582)

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for appellant.

*Elton Watkins* and *McDannell Brown,* both of Portland, for respondent.

BELT, J. This is an action to recover on an insurance policy issued by the defendant in the amount of $10,000, payable to Mrs. Alice McCredie in the event of the accidental death of C. Y. Wigfall. The first trial resulted in a judgment for the defendant insurance company. On appeal the judgment was reversed and the cause remanded for a new trial because error was committed in excluding the dying declarations of the assured relating to the cause of his death. (*McCredie v. Commercial Casualty Insurance Co.,* 142 Or. 229 (20 P. (2d) 232)). The jury failed to agree on the second trial. The third trial resulted in a verdict for the plaintiff for the amount named in the policy together with an award of $5,000 as attorney fees. From the judgment entered thereon, the defendant appeals.

The policy insured against loss from accidental bodily injuries and, in the event of loss of life resulting therefrom, the company agreed to pay the sum of $10,000. The sole issue of fact, aside from the question of reasonable attorney fees, was: Did Wigfall commit suicide, or did he die as the result of a gunshot wound inflicted by a highwayman? Under its policy, the insurer was not liable in the event of suicide. It was liable if Wigfall was shot by some other person.

■ Based upon evidence in the case, strong argument that Wigfall committed suicide is advanced by counsel in the brief of appellant. However, there is substantial evidence tending to support the theory of the plaintiff. Under this state of the record, the finding of the jury is conclusive.

■ It is urged that error was committed in receiving in evidence certain letters written by Wigfall to his mother, which spoke of his future plans and a happy and contented state of mind. One of these letters was written a few hours prior to his death. The other letters covered a period of three or four months preceding it. Appellant asserts that the statements of deceased in these letters were merely hearsay and self-serving. Previous to the admission of these letters, the defendant had introduced evidence of statements alleged to have been made by Wigfall expressing an intention to commit suicide. The question is new in this state. In some jurisdictions this evidence is excluded for various reasons. Some courts hold it is hearsay, others reject it on the ground that it is self-serving, and still others refuse to admit it because not a part of the res gestae. See *Hartman v. Keystone Ins. Co.*, 21 Pa. 466; *Life Ins. Co. of Virginia v. Hairston*, 108 Va. 832 (62 S. E. 1057, 128 Am. St. Rep. 989). It is believed, however, that the better reasoned cases sustain the admissibility of such evidence: *Supreme Lodge v. Foster*, 26 Ind. App. 333 (59 N. E. 877); *Sharland v. Washington Life Ins. Co.*, 101 Fed. 206; *New York Life Ins. Co. v. Mason*, 272 Fed. 28.

In our opinion the jury, in passing on this vital issue of fact, was entitled to know the mental state of the insured. What were his habits and temperament? Was he satisfied with life or was he abiding in the shadow of gloom and despondency? All of these matters were proper for the consideration of the jury in determining the probability of the charge that Wigfall took his own life. While the statements of Wigfall possess some of the characteristics of hearsay and have some of the aspects of self-serving declarations, yet

they are, in reality, "verbal acts", and are admissible, not to show the truth of what is contained in his letters but rather to show his state of mind and his intentions at the time of writing them. Such was the limitation placed upon these letters when received in evidence. As stated in *State v. Farnam,* 82 Or. 211 (161 P. 417, Ann. Cas. 1918A, 318):

"If the doing of an act is a material question, then the existence of a design or plan to do that specific act is relevant to show that the act was probably done (1 Wigmore, Ev. § 102); and, considering the plan or design as a condition of the mind, a person's own statements of a present existing state of mind, when made in a natural manner and under circumstances dispelling suspicion and containing no suggestion of sinister motives, only reflect the mental state, and therefore are competent to prove the condition of the mind, or, in other words, the plan or design."

If a letter had been found in Wigfall's desk written shortly before his death, expressing a suicidal intent, it would, under most of the authorities, be received in evidence, going to the probability that deceased did, in fact, take his own life. It would seem, as a matter of common sense, that if a letter indicated a contrary intention and expressed a desire to live, it should be received to aid the jury in determining the mental state of the decedent. Rules of evidence, after all, should be promulgated to the end that the truth of the controversy may be determined. When the defendant offered evidence tending to show weariness of life on the part of Wigfall and a desire to end it, the door was opened to the plaintiff to show by declarations of the decedent a different state of mind,—one consistent with the desire to live: *Shepard v. United States,* 290 U. S. 96 (54 S. Ct. 22).

It may be that some of the letters were rather remote, but not so much so as to convince us that the trial court abused its discretion in receiving them in evidence.

■ Wigfall, in his dying declaration, described the clothes and stature of the man who is alleged to have shot him while he was returning from Vancouver to Portland across the Interstate Bridge about 1:30 a. m. on August 12, 1930. According to the witness W. W. McCredie, Wigfall said to him, "Judge, I have been shot and the party got away with my watch" and then described the man as "dark complexioned, had a mixed, a dark mixed suit on and he was slim". It is asserted that the court erred in allowing the witnesses Mary Crouch and Ben Bogart to testify that, while driving along this same highway at approximately a quarter of a mile from the scene of the alleged shooting a few minutes before it occurred, a man resembling closely as to stature and dress the person described by Wigfall tried to stop them. This evidence has slight probative value. Nevertheless, we think it was admissible as tending to corroborate the dying declarations of Wigfall. None of the authorities cited convince us to the contrary. Even if it be assumed that error was committed, we think it would not afford a basis for reversal.

■ Error is assigned because the trial court, after the commencement of this action, allowed the petition of the Security Savings and Trust Company to be substituted as party plaintiff. We can not agree with this contention. The record discloses that the plaintiff has succeeded to all the rights, title, or interest of Alice H. McCredie in and to this cause of action. In a suit between Alice H. McCredie and the benefi-

ciaries under the last will and testament of Wigfall, it was adjudicated that Mrs. McCredie had, pursuant to a written contract with the assured, agreed to receive the proceeds of the insurance policy as trustee for certain beneficiaries designated in the will of the assured. It appears further that Mrs. McCredie has resigned as trustee and executrix of the estate of C. Y. Wigfall, deceased, and that the Security Savings and Trust Company has been appointed administrator thereof. In the light of this record, if the defendant insurance company satisfies the judgment herein, there will be no further liability on the policy.

■ Appellant asserts that it was error to allow interest from date of proof of loss and that interest should be computed from date of judgment. Section 57-1201, Oregon Code 1930, provides that the ''rate of interest in this state shall be six per centum per annum  *  *  * on all moneys after the same become due;  *  *  *''. Section 46-506 (k), Oregon Code 1930, relative to standard provisions of insurance policies provides:

''*Time for Settlement.*—A provision that when a policy shall become a claim by the death of the insured, settlement shall be made upon receipt of due proof of death and of the interest of the claimant, and not later than two months after the receipt of such proof.''

In the instant case, if the insurance company was liable at all, it was bound to pay the sum of $10,000. We are not concerned with cases in which the extent of the liability was unliquidated. After proof of loss was made on October 15, 1930, the defendant insurance company had a statutory allowance of 60 days before being obliged to make payment. We conclude therefore that interest should have been computed from December 15, 1930: *Bell v. Hanover Fire Ins. Co.*, 107 Or. 513

(214 P. 340, 215 P. 171); *Fireman's Fund Insurance Co. v. Haley,* 129 Miss. 525 (92 So. 635, 23 A. L. R. 1470); *Palatine Ins. Co. v. O'Brien,* 107 Md. 341 (68 Atl. 484, 16 L. R. A. (N. S.) 1055); 33 C. J. 147; Couch Cyclopedia of Insurance Law § 1865.

In view of the amount of attorney fees awarded in the lower court, the application for an additional allowance in this court will be denied.

With the slight modification relative to the matter of interest, the judgment is affirmed.

RAND, C. J., and BEAN and ROSSMAN, JJ., concur.

KELLY, J., not sitting.