McINTOSH et al., Appellants, v. HARTFORD FIRE INSURANCE CO., Respondent.

(No. 7,754.)

(Submitted March 22, 1938. Decided April 6, 1938.)

[78 Pac. (2d) 82.]

*Mr. E. M. Child* and *Mr. James B. O'Flynn,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

436

*Messrs. Walchli & Korn* and *Messrs. Toole & Boone,* for Respondent, submitted a brief; *Mr. Howard Toole* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiffs brought ten separate actions to recover upon ten separate standard fire insurance policies issued upon the McIntosh Opera House block, in Kalispell, which was partially destroyed by fire on June 29, 1935. All of these cases were consolidated for trial.

The total amount of insurance on· this building was $26,500. All of the policies contained the following provision: ''In the

event of a disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss.''

The owner, being unable to agree as to the amount of the loss with the adjuster for the ten companies, resort was had to the above-quoted provisions of the policies. F. A. Brockett was selected as appraiser by the owner. The insurance companies selected Floyd Pappin as appraiser; the appraisers thus chosen selected C. J. Forbis as umpire.

The policies also provided that the company insured the owner ''against all direct loss or damage by fire except as hereinafter provided to an amount not exceeding, * * * '' and also, ''This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.''

The appraisers met and determined the new value of the building to be $50,000; that by reason of the age of the building (from 38 to 40 years), it had depreciated 48 per cent.; and that its sound value before the fire was $26,200. They further determined the cost of repairing the building, using new materials where necessary to restore it to the condition it was in before the fire, was $13,392.60. The appraiser for the companies proposed to depreciate that sum by 48 per cent., thereby fixing the amount of liability of the ten companies at $7,000. The appraiser selected by the owner declined to agree with this depreciation. The matter was submitted to the umpire, who, together with the appraiser selected by the companies, signed an award fixing

the damages at $7,000. These actions were then brought to set aside this award and for judgment for the face of the policies. The cause was tried before the court without a jury. The court made findings and conclusions sustaining the award, and entered judgment against the various companies accordingly. The appeal is from the judgment.

The theory of plaintiffs' action was that the appraiser and umpire who signed the award acted arbitrarily in depreciating the amount found necessary to restore the building to the condition which obtained before the fire.

Assuming that an award may, in a proper case, be set aside, the primary question for solution in this case may be stated as follows: What is the liability of the insurer under a standard form of fire insurance policy in case of partial loss, where the cost of repair is less than the amount of insurance, and the building before the fire had depreciated in value?

It is the policy of the law to favor the settlement of disputes by arbitration, and every reasonable intendment will be indulged to give effect to such proceedings. An award made by appraisers or arbitrators should not be vacated unless it was made without authority, or as a result of fraud or mistake, or misfeasance or malfeasance of the appraisers. (*Lee* v. *Providence Washington Ins. Co.*, 82 Mont. 264, 266 Pac. 640, 644.) In that case the court said: "It goes without saying that, if appraisers, without basis of fact, without knowledge or information of the subject under consideration, act with respect thereto in an arbitrary and wrongful manner, to the substantial injury of one of the parties affected, they are guilty of misconduct, or, it may be said, of misfeasance, at least. There may be ample misconduct in a legal sense to cause the court to set aside an award, even where there is no ground for importing the slightest improper motives to the appraisers. (*Providence Washington Ins. Co.* v. *Board of Education*, 49 W. Va. 360, 38 S. E. 679.)"

Although the award may be fair on its face, it is proper for the court to consider the method by which the appraisers reached their decision. But courts should be cautious in interfering in this class of cases and should never do so except

to prevent a manifest injustice. (*Lee* v. *Providence Washington Ins. Co.*, supra.)

Section 8157 of our Codes provides: "If there is no valuation in the policy, the measure of indemnity in an insurance against fire is the expense, at the time that the loss is payable, of replacing the thing lost or injured, in the condition in which it was at the time of the injury."

There was no valuation of the property insured in any of the policies involved here. The above statute is as much a part of these policies as though written in them. (*Lee* v. *Providence Washington Ins. Co.*, supra.) In the case just cited it was said: "Both by the express terms of the policies and by the provisions of the statute, the insurance companies were liable to pay to the insured, by reason of the injury and destruction of his property by fire, which was the hazard covered by the policies, a sum equal to the expense he would be put to in replacing the property in the condition in which it was at the time of the injury, not in excess of the amounts specified in the policies."

This section of the statute has only been construed in the one case by this court. It was a part of the California Code for many years, but received no construction by the courts of that state while in effect. It was framed as a part of the Field Code of New York, which was never adopted. The code commissioners who first used this language cited the case of *Niblo* v. *North American Fire Ins. Co.*, 3 N. Y. Super. Ct. 551. In that case the court said of the insurance policy: "It agrees to make good to the assured, such loss or damage as shall happen by fire, to the property specified." The court by this language clearly interpreted the insurance policy to be one of indemnity, as is declared by our statute and the decision of this court. Such is the trend of judicial decisions in the absence of such a statute.

The authors of an able article appearing in 29 Columbia Law Review, 857, on the subject of "Valuation of Property to Measure Fire Insurance Losses," after a review and discussion of decisions and after having stated their conclusions at length, on page 899, stated as a conclusion from their conclusions, as follows: "In general we conclude that the opin-

ions of the courts, especially of the appellate courts, have shown an increasing desire to make the measure of recovery for fire insurance losses correspond to the actual loss sustained by the insured in view of all the circumstances of the case."

The Pennsylvania court, in the case of *Fedas* v. *Insurance Co.*, 300 Pa. 555, 151 Atl. 285, 288, under a standard fire insurance policy, announced the rule as to the measure of recovery as applicable to a case of this kind, which we consider correct and adopt. It was there written: "Where a building is entirely destroyed, the application of the rule is simple; where a building is partially destroyed, it may be difficult to arrive at actual cash value, less depreciation if it is to be considered; but difficulties cannot prevent the right to compensation. There enters into actual cash value of the part destroyed the fact that it was a part of an entire property and the use made of it. It is summed up in the idea 'the cost of replacing in as nearly as possible the condition as it existed at the date of the fire.'

"The actual cost of new material, with deduction for depreciation, which is not sufficient to replace the building as nearly as it could be as of the date of the fire, does not comply with the policy, which was to insure against loss not exceeding the amount named in the insurance. If the new material is to be depreciated to reach the actual cash value contemplated by the policy, the timber or part destroyed must be considered in connection with the whole structure and valued accordingly, and should reflect the use in place. The result reached is that called for in the policy—replacement as nearly as possible, or its cost. If part of the building destroyed cannot be replaced with material of like kind and quality, then it should be substantially duplicated within the meaning of the policy. * * *

"To sum up, 'actual cash value,' means the actual value expressed in terms of money of the thing for the purpose for which it was used; in other words, the real value to replace. The rule established by our decisions seeks a result which will enable the parties to restore the property to as near the same condi-

tion as it was at the time of the fire, or to pay for it in cash; that was the loss insured against.''

Counsel for the insurance companies have invited our attention to certain cases as supporting their theory; but for reasons which we shall now notice they are of no persuasive force.

In the case of *Nicholson* v. *Bankers' & Shippers' Ins. Co.*, 164 Miss. 523, 145 So. 349, from a reading of the résumé of the briefs in the state reports, we determine that a roof was damaged by fire, but not destroyed. Owing to a city ordinance it could not be repaired, nor could it be rebuilt with like material. The court there treated the roof as being totally destroyed, and applied the rule applicable to a case where a building is totally destroyed by fire, treating the roof as a separate unit.

The case of *Svea Fire & Ins. Co.* v. *State Savings & Loan Assn.*, 19 Fed. (2d) 134, involved a building partially destroyed, but the residue was so badly injured that the salvage was worthless. The court there applied the rule, in determining the amount of the loss, properly applicable in cases where the buildings were entirely destroyed.

The case of *Smith* v. *Allemannia Fire Ins. Co.*, 219 Ill. App. 506, is frequently cited as holding that the measure of a cash value under a standard policy is replacement cost minus physical depreciation—the rule for which defendant companies here contend. This decision is very ably and correctly reviewed in the article in 29 Columbia Law Review at page 881, adverted to supra, as follows: ''The main question, therefore turned on the valuation of the entire building, the insured contending in the appellate court that 'actual cash value' meant fair market value, which the insurer contended that it meant reproduction cost less depreciation for age. In reversing the decision and remanding it to a lower court for retrial, the upper court stated its conviction that the value of the entire building was much greater than the amount set by the plaintiff. It supported this conviction by a statement, based on the authority of Cooley on Insurance, to the effect that 'appellee under his policy is entitled to be indemnified since actual cash value means reproduction value less depreciation for age, and not market value.' * * *

The case, however, is by no means clear since the court did not explain just what it included under the heading 'depreciation for age,' a phrase that might well have included a deduction for obsolescence and inadequacy. It is still more confused by the apparent neglect of the fact stressed in the previous paragraph that the antithesis, quoted from Cooley, between market value on the one hand, and replacement cost minus depreciation on the other hand, does not suggest all the alternatives in the case.''

In the case of *McIntosh* v. *Home Mutual Ins. Assn.,* 198 Iowa, 1038, 200 N. W. 694, the court approved an instruction that the measure of recovery was the difference in value of the building before and after the fire, but in no event in excess of the cost of restoration, making proper allowance for deductions and for deterioration, the court approving the verdict for more than the full amount of the cost of restoration, explaining that some additional repairs were perhaps necessary.

The appraisers in the instant case were in error in making their award, as well as the trial court in refusing to set it aside. It is not strange that these errors were committed, as all of the courts have experienced great difficulty in construing these policy provisions where a partial loss has been suffered.

The judgment is reversed, and the cause remanded, with directions to the district court of Flathead county to modify its findings and conclusions in accordance with the views expressed herein, and to enter separate judgments against the defendant companies for the aggregate amount of $13,392.60, together with legal interest from the date of the award.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument and takes no part in the above decision.