69 So.2d 786 (1954)
NEW YORK CENT. MUT. FIRE INS. CO.
v.
DIAKS.
GUARANTEE MUT. FIRE INS. CO.
v.
DIAKS.
DRUGGIST MUT. INS. CO.
v.
DIAKS.
Supreme Court of Florida, Special Division A.
January 22, 1954.
*787 Green & Bryant, Ocala, for appellants.
Greene, Ayres & Greene, Ocala, for appellee.
SEBRING, Justice.
The appellee, Diaks, was the holder of three fire insurance policies which were issued by the appellants to cover fire loss on the furniture and fixtures in a restaurant operated by Diaks. The restaurant was destroyed by fire and when claims were filed the insurance companies denied liability. Diaks thereupon instituted suit upon the policies and recovered the full amount of the loss determined, in the sum of $21,361.60, together with an attorneys' fee in the amount of 20 per cent of the principal recovery. Judgment for this total amount was entered and this appeal followed.
As one of the defenses to the complaint in the court below the appellants asserted that the policies sued on were not in effect at the time of the fire loss because "the same [were] cancelled before the loss alleged * * * to have occurred." At the opening of the trial held before the circuit judge without the intervention of a jury, defendants' counsel stated, with reference to their defenses: "We admit that they were valid and existing policies," and that trial should be had solely to determine the damages "according to the policy and the law."
We think that by the statement made by defendants' counsel in open court in respect to this defense, it must be held that the defendants admitted liability on the policies and that the only issue left for the court to try was as to the question of damages. Esch v. Forster, 123 Fla. 905, 168 So. 229; Lewis v. Wilson, 151 U.S. 551, 14 S.Ct. 419, 38 L.Ed. 267; Pineapple Orange Co. v. Travelers' Ins. Co., 104 Fla. 600, 140 So. 471.
Despite what we think amounted to a waiver of defenses and an admission of liability, the defendants make some contention in their briefs that the evidence adduced at the trial discloses that the policies sued on were void, under the clause in the policies relative to material facts. This contention appears to be bottomed upon the proposition that because the insured obtained the policies in the name of "Michael Diaks, d/b/a Central Restaurant," and failed to disclose the fact that a young relative, Neofitos Michaelides, had an "interest" in the premises, he thereby rendered the policies void because of a failure to disclose material facts in respect to the ownership of the business.
Aside from the question of waiver, it is our view that the evidence on this issue (which plaintiff claims was beyond the issues made by the pleadings and contrary to the stipulation to confine the trial to the question of damages only) does not by any means constitute proof of an outstanding partnership or proprietorship interest in Michaelides. In respect to this issue the record shows that a short time before the policies in question were obtained from the defendants Diaks converted what had been a partnership between himself and a third party into a sole proprietorship by buying the partner's half interest in the business for $12,000. At that time, so the evidence shows, young Michaelides wanted to go into business with Diaks. The boy went to work in the restaurant pursuant to some *788 arrangement looking toward his acquisition of a one-fourth share in the business. He had only $2,000 toward the $6,000 required and this he turned over to Diaks, who testified that until the boy decided to or was able to buy in a one-fourth share he was to receive in exchange for his work about the place 25% of the profits on a tryout basis. Some of this money he drew out and some amounts were added to his $2,000 credit.
Such testimony is, we think, inconclusive under the particular circumstances. Compare Ambrecht Lumber Co. v. Adair, 91 Fla. 460, 108 So. 222. It is apparent from Diaks' testimony that he had a limited command of the English language and would be incapable of expressing the fine points of distinction between option agreements on the one hand, and executed partnerships, on the other. From the entire record, it appears that the trial judge would have been fully justified in concluding that the first alternative was the more likely one. See 55 Am.Jur. 495. However, even if this were not the case, we think, as aforesaid, that the defendants' stipulation for limiting the issues on trial precluded a contest of liability vel non under the policy.
We are supported in this conclusion not only by what was said by defendants' counsel at the beginning of the trial but also by the fact that at the close of the case, after the facts surrounding the entire transaction had been fully disclosed, the defendants' counsel, in an effort to minimize the work and services rendered by plaintiff's counsel in order to limit allowance of fees, again asserted that defendants had at the onset of the trial "agreed that they were liable and that the question was as to the extent of their liability."
The same facts and circumstances, relative to Michaelides' position, bear on another question raised by appellants: Is the judgment of the court below in error in permitting recovery by Diaks of the full amount of loss computed in view of the alleged "partnership" interest outstanding in another person? Our conclusion above as to the nature of that "interest" is determinative on the latter point.
In the light of the conclusions reached by us, we think that there is only one basic issue to be considered on this appeal; namely, the propriety of the measure of damages in the cause. The policy provides that recovery shall be limited to "actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property. * * *" The record as a whole discloses that all parties recognized from the outset that there was no real market for used equipment of the nature involved from which market value could be determined or inferred. There was no objection to the introduction of evidence of replacement cost, less depreciation and salvage. Upon this, together with the facts that defendants' agent had himself appraised the insured equipment at $25,000 less than a year before the fire, that the price paid by plaintiff for his partner's half interest a year earlier had been $12,000, and that considerable additions to plant facilities had since been made by plaintiff, the court determined the value of the equipment lost and entered judgment for the amount above noted.
Whatever method plaintiff may have used in making up his schedule of losses, the court expressly found that the amounts shown on the schedule constituted "a comprehensive statement of losses as proven by a preponderance of the evidence." (Emphasis supplied.) In view of all the evidence on the issue of valuation, it cannot be said that the rule applied by the court was arbitrary or that it failed to employ the proper standard in calculating loss.
The "actual cash value" is not, of course, synonymous with replacement cost, or even replacement cost less depreciation. Vol. 2, Words and Phrases, pp. 221-225; 1 C.J.S. p. 1434. "These considerations, however, do not negative consideration of the cost of reproduction or replacement as a factor in determining the actual cash *789 value [of] * * * property insured." 29 Am.Jur. 891. In considering an analogous situation in the case of Glens Falls Ins. Co. v. Gulf Breeze Cottages, Inc., Fla., 38 So.2d 828, this Court referred to the case of McIntosh v. Hartford Fire Ins. Co., 106 Mont. 434, 78 P.2d 82, 84, 115 A.L.R. 1164, wherein it is said that "`actual cash value' means the actual value expressed in terms of money of the thing for the purpose for which it was used * * *." (Emphasis supplied.)
By that rule, it is plain that the value to be determined is the value of the particular property which was lost or destroyed. In making such a valuation, depreciation rates based on the average useful life of similar equipment would not necessarily be controlling, where, as in the instant case, testimony is adduced as to the actual condition or value of the specific property lost. And "bearing in mind that the purpose of the contract was to indemnify the owner against loss", Glens Falls Ins. Co. v. Gulf Breeze Cottages, Inc., supra [38 So.2d 828], the rate of depreciation allowed in these circumstances need not be the standard rate. The chancellor, in applying an average rate on the various groups of fixtures, adopted a rule which was fair and warranted by the evidence.
The final question for consideration relates to the order allowing attorneys' fees in the cause. It is contended by the defendants that the amount allowed to the plaintiff's attorneys for bringing the action was excessive. We cannot agree with this contention. Attorneys produced by the plaintiff as witnesses on the issue testified that a fee of 20 per cent was reasonable and proper. No countervailing testimony was offered by the defendants, and in our opinion the fee allowed by the court was warranted by the unusual features of the case, including a prolonged trial and the complexity of the evidentiary detail required. See Equitable Life Assurance Soc. of United States v. Mittelhauser, 130 Fla. 794, 178 So. 559.
From the conclusions reached it follows that the judgment appealed from should be affirmed.
It is so ordered.
ROBERTS, C.J., and THOMAS and MATHEWS, JJ., concur.