**BERKSHIRE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Richard G. MOFFETT, Jr., Appellee.**

**No. 23145.**

United States Court of Appeals
Fifth Circuit.

June 13, 1967.

George J. Baya, Miami, Fla., for appellant.

George A. Stelogeannis and Greene, Greene & Kennelly, Jacksonville, Fla., for appellee.

Before MARIS,* BROWN and THORNBERRY, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the defendant, Berkshire Mutual Insurance Company, from a judgment entered for plaintiff, Richard G. Moffett, Jr., in the United States District Court for the Middle District of Florida in an action by plaintiff to recover on a fire insurance policy issued by defendant covering plaintiff's building in the amount of $50,000 and its contents in the amount of $20,000. The property was located in Jacksonville, Florida. Prior to the time the plaintiff acquired the property, the building had been used as a night club. After the plaintiff purchased the building and its contents, the furnishings of the night club, namely, chairs, tables, bar stools, refrigerators, beer coolers, safes, cash registers and other equipment, remained in the building. At the time of the fire in October 1962 the building was occupied by the Church of God in Christ of Western Florida. The Church brought certain of its own property into the building. The building and its contents were totally destroyed by the fire. The plaintiff submitted a sworn proof of loss but the defendant refused to pay.[1] The

---

* Of the Third Circuit, sitting by designation.

1. The sworn proof of loss included two schedules, schedule A in which the plaintiff listed and valued the property he lost in the fire and schedule B in which the Church listed and valued its personal property lost in the fire.

plaintiff thereupon sued to recover his loss in the amount of $19,405.00.[2] The defendant answered, denying liability and contending that the policy was void because the plaintiff had misrepresented the value of the items destroyed and had claimed certain items to have been destroyed which were not in the building at the time of the fire. The defendant also contended that the replacement cost of the property would not exceed $2,500.00. The case was tried to a jury. At the trial the plaintiff testified that the actual cash value of the contents destroyed by the fire was $19,405.00. The evidence was in sharp conflict as to the actual value of the destroyed property. The defendant also asserted its defense of false representation. The jury returned a verdict in favor of the plaintiff in the amount of $19,405.00, upon which judgment was entered. Subsequently, an order was entered granting the plaintiff attorney's fees in the amount of $6,000.00 together with interest in the amount of $2,121.36. This appeal by the defendant followed.

The defendant's contention is that the burden was upon the plaintiff to prove both the actual cash value of the property at the time of the loss and the replacement cost thereof with material of like kind and quality within a reasonable time after the loss. It relies upon the language of the insuring clause of the policy which provided that the defendant insured the plaintiff

"to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair * * *, nor in any event for more than the interest of the insured, against all direct loss by fire. * * * ".

Our first inquiry is whether the plaintiff sustained the burden of proving the actual cash value of the destroyed property at the time of the loss. The plaintiff testified that he purchased the property in December 1961 and that under date of November 30, 1961 he was given an inventory of the contents of the building which he personally checked with one of the prior owners. The prior owners did not have invoices or records of the original costs, nor was the plaintiff able to procure this information. In order to ascertain the cash value of the property destroyed by the fire, the plaintiff took the original inventory to one Mathew Sloat, a dealer in used restaurant equipment, who furnished him with estimates of high price figures for new items and low price figures for junk equipment. The plaintiff did not inform Sloat of the age or condition of the items, nor did the plaintiff know or attempt to ascertain the age or condition of these items. After receiving these estimates from Sloat, the plaintiff conferred with the prior owners of the property, who together with the plaintiff arrived at the estimates of the actual cash value of the contents of the building at the time of the fire to which plaintiff testified. He further testified that he had originally included in his claim a piano and a cash register, which had appeared on the inventory, but on learning that these had been removed from the building prior to the fire, had deleted these items from the final proof of loss. At the time of trial Sloat was in the hospital and unable to testify.

One Cornelius Smith, who had lived in the building as a caretaker from 1959 to 1962, corroborated the plaintiff's testimony with respect to the items shown on the proof of loss, testifying that some of

---

**2.** The Church joined in plaintiff's suit as co-plaintiff to recover under the policy for its own fire loss. The defendant filed a motion to strike the claim of the Church from the complaint which the district court granted. Hence, we are concerned here only with plaintiff's claim.

this furniture and equipment was new, some old, and others in very poor condition. Rev. Samuel P. Nesbitt, the minister of the church which occupied the premises, also testified that the items listed by the plaintiff were in the building at the time of the fire. He stated that he had removed the piano, which had been listed in the inventory, from the building and that one cash register had been removed.

The defendant contends that the testimony of the plaintiff was insufficient to establish the actual cash value and the cost of replacing the items, and that the plaintiff, having failed to carry the burden of proving actual cash value, was entitled to nominal damages only. Furthermore, argues the defendant, the uncontradicted evidence which it produced at the trial established that the cost of replacing the destroyed property did not exceed $6,000.00 and that, therefore, recovery should not have exceeded that amount.

■ All the events involved here occurred in Florida, and it is undisputed that we must look to the law of that State for guidance. The defendant's position is that the district court should have strictly adhered to the market value and the reproduction cost less depreciation tests. The plaintiff, however, argues that the application of these tests would serve to shackle the trier of the facts and that the courts of Florida have adopted the broad evidence rule which is that the proper test in a particular case depends upon the nature of the property insured, its condition and other circumstances existing at the time of loss. In this regard the Supreme Court of Florida, in New York Cent. Mut. Fire Ins. Co. v. Diaks, 1954, Fla., 69 So.2d 786, in construing the language of an insuring clause substantially similar to the provision contained in the policy involved in this case, stated:

"The 'actual cash value' is not, of course, synonymous with replacement cost, or even replacement cost less depreciation. Vol. 2, Words and Phrases, pp. 221–225; 1 C.J.S. p. 1434. 'These considerations, however, do not negative consideration of the cost of reproduction or replacement as a factor in determining the actual cash value [of] * * * property insured.' 29 Am.Jur. 891. In considering an analogous situation in the case of Glens Falls Ins. Co. v. Gulf Breeze Cottages, Inc., Fla., 38 So.2d 828, this Court referred to the case of McIntosh v. Hartford Fire Ins. Co., 106 Mont. 434, 78 P.2d 82, 84, 115 A.L.R. 1164, wherein it is said that ' "actual cash value" means the *actual value expressed in terms of money of the thing* for the purpose for which it was used * * *.' (Emphasis supplied.)

"By that rule, it is plain that the value to be determined is the value of the particular property which was lost or destroyed. In making such a valuation, depreciation rates based on the average useful life of similar equipment would not necessarily be controlling, where, as in the instant case, testimony is adduced as to the actual condition or value of the specific property lost. And 'bearing in mind that the purpose of the contract was to indemnify the owner against loss', Glens Falls Ins. Co. v. Gulf Breeze Cottages, Inc., supra [38 So.2d 830], the rate of depreciation allowed in these circumstances need not be the *standard* rate. The chancellor, in applying an average rate on the various groups of fixtures, adopted a rule which was fair and warranted by the evidence." [69 So.2d 786, 788–789].

The governing rule to be applied in a case of this kind was defined by the District Court of Appeal of Florida in Worcester Mutual Fire Insurance Co. v. Eisenberg, 1962, Fla., 147 So.2d 575, 576, as follows:

"In order to establish to what extent an insurer is liable where 'actual cash value' is the yardstick used to determine damages, it is necessary to determine what criteria is to be used

to define this phrase. In New York Central Mutual Fire Ins. Co. v. Diaks, Fla.1954, 69 So.2d 786, the Supreme Court indicates that in these matters Florida will adhere to the so-called 'Broad Evidence Rule.' Under this rule, any evidence logically tending to establish a correct estimate of the value of the damaged or destroyed property may be considered by the trier of facts to determine 'actual cash value' at the time of loss. Where, as in this case, evidence of the wholesale cost of the destroyed merchandise is presented, it constitutes relevant evidence of actual cash value. Therefore, we think the trial judge correctly denied appellants' motion for new trial made on the ground that there was no evidence of actual cash value."

This rule, which recognizes that any evidence which logically tends to establish a reasonable approximation of the value of the property destroyed may be properly considered by the trier of the facts to determine the actual cash value at the time of loss, provides a flexible test to determine the actual cash value of an insured's property, and has been adopted by a number of other jurisdictions as well. See Annotation, 61 A.L.R. 2d 711, 718–719. Thus, in Pinet v. New Hampshire Fire Insurance Co., 1956, 100 N.H. 346, 126 A.2d 262, 61 A.L.R.2d 706, the court stated that in the final analysis the actual cash value of the plaintiff's loss must be expressed in terms of money, which was a matter of opinion, that the trier of fact in determining that question might receive evidence as to whether there was a fair market value or replacement cost and in either case what it might be, and that while fair market value and replacement cost were permissible standards for determining fire losses, they were standards and not shackles. Thus, the cardinal principle is that the purpose of the insurance contract is to indemnify the owner against loss,[3] that is, to place him in the same position in which he would have been if no fire had occurred.

■ Viewing the plaintiff's testimony in the light of the standard laid down by the Florida courts, we think that it was sufficient to prove the fair and reasonable value of the personal property lost. For it is settled that the owner of personal property is qualified by his ownership alone to testify as to its value. The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value,[4] and as an interested witness, it is for the jury to evaluate the credibility of his testimony.[5] In making its evaluation of the plaintiff's testimony the jury had the benefit of the testimony of the defendant's witnesses that the cost of replacement would be substantially less than the plaintiff's valuation. The jury, however, was the trier of the facts and the judge of the credibility of the witnesses and of the weight of the evidence and it chose to credit the plaintiff's evidence.

■ Where the existence of damages has been established, recovery will not be denied because such damages are difficult to ascertain. While damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference. A reasonable basis of computation and the best evidence which is obtainable under the circumstances of the case and which will enable the trier of the facts to arrive at an approximate estimate of

3. Glens Falls Ins. Co. v. Gulf Breeze Cottages, Inc., 1949, Fla., 38 So.2d 828, 830.

4. Caten v. Salt Lake City Movers & Storage Co., 2 Cir. 1945, 149 F.2d 428, 433; Brooks Transp. Co. v. McCutcheon, 1946, 80 U.S.App.D.C. 406, 154 F.2d 841, 843; McKinnon v. Michaud, 1953, 37 Tenn. App. 148, 160, 260 S.W.2d 721, 726; Lawton v. Strong, 6 Cir. 1957, 249 F.2d 299, 302; Harbond, Inc. v. Anderson, Fla. Dis.Ct.App., 1961, 134 So.2d 816, 819; Knuppel v. American Insurance Company, 7 Cir. 1959, 269 F.2d 163, 166.

5. Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

the loss is sufficient.[6] The jury verdict will be upheld if there is a rational basis for it.[7] We conclude that the evidence on the issue of the fire loss was properly submitted to the jury, and that the plaintiff sustained his burden of proving the actual value of the destroyed property at the time of the loss.

The defendant's next contention is that the evidence clearly established that the plaintiff had attempted to defraud by falsely including in his original claim items which were not in the building at the time of the fire and by overvaluation of the destroyed property, and that these false representations rendered the fire insurance policy void. The plaintiff admitted that originally certain items had been claimed as destroyed in the fire but subsequently were deleted from the proof of loss. There was a conflict in the testimony whether or not certain other items were in the building at the time of the fire. The trial judge properly charged the jury on the issues of concealment and fraud. It is the general rule of law with respect to sworn proofs of loss, that if such proofs contain false statements, known by the person making them to be false, for the purpose of perpetrating a fraud, the entire policy of insurance will be voided and the person making the fraudulent statement will take nothing under the policy, Chaachou v. American Central Insurance Company, 5 Cir. 1957, 241 F.2d 889. In that case we stated that "This presents no danger that valuable rights will be lost by mere mistakes or errors in calculations, exaggerations in the amounts of the claims, or the assertion, even though doubtful, of coverage or other contentions as to all or particular items when these flow from the mistaken good faith judgment or opinion of the assured or his agents. Canners Exchange Subscribers at Warners Inter-Insurance Bureau v. North American Canning Co., 5 Cir., 194 F.2d 588, 589. For the courts will * * * make it positive that the insurer must satisfy the heavy burden of establishing that the conduct complained of was done and was a wilful, purposeful misrepresentation of facts having substantial materiality under circumstances to which the law would attribute the intention to defraud, Claflin v. Franklin Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76, that is, cheat, deceive and cause the insurer to do other than that which would have been done had the truth been told." [241 F.2d at p. 893]. Therefore, an overestimate of the value of goods lost in a fire, an error in judgment with respect to fixing a value, a mistake, or an inadvertence, will not render an insurance contract void. Since reasonable men may differ as to the values which they place on particular objects, the rule voiding a policy of insurance will not apply in its severity unless the proof of the false swearing was such that no other conclusion can be drawn than that a purposeful misrepresentation was intended. The questions of fraud or false swearing or overvaluation are questions for the jury to determine where there is probative evidence on the matter.[8]

The evidence in this case appears to us to be such that reasonable minds could easily differ as to whether the plaintiff was guilty of false swearing and the same may be said with respect to the question whether there was a conscious, wilful, and fraudulent misrepresentation on the part of the plaintiff. The jury had before it the divergent estimates and opinions as to the value of the items involved and whether or not the

---

6. Vanguard Insurance Company v. Connett, 10 Cir. 1959, 270 F.2d 868, 870. See, also, Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652; Hughes v. Great American Indemnity Company, 5 Cir. 1956, 236 F.2d 71, 75.

7. Home Ins. Co. of N. Y. v. Tydal Co., 5 Cir. 1945, 152 F.2d 309, 311.

8. Soler & Co. v. United Firemen's Insurance Co., 1936, 299 U.S. 45, 50, 57 S.Ct. 54, 81 L.Ed. 30; Badger Mutual Insurance Company v. Morgan, 5 Cir. 1963, 313 F.2d 783, 788.

items listed on the plaintiff's final proof of claim were in the building at the time of the fire. The verdict of the jury, which is supported by substantial evidence, negates the charges of overvaluation and fraud.

The defendant's final contention is that the district court abused its discretion in fixing the plaintiff's attorney's fees in the amount of $6,000.00 and in awarding the plaintiff interest from 60 days after the proof of loss was filed. The defendant contends that the fee is grossly excessive and not within the meaning of the Florida statute which provides for a reasonable sum as fees or compensation for the insured's attorney in cases in which recovery is had. Fla.Stat.Ann. § 627.0127. The plaintiff urges that the defendant's contention is wholly lacking in merit because although the plaintiff had filed in the district court in support of his motion a memorandum of law and an affidavit of services performed on his behalf, the defendant did not attend the hearing on the question. On the contrary, says the plaintiff, counsel for the defendant informed the district court that he did not wish to submit any opposing affidavits in this regard and would leave the matter to the court's discretion and judgment.

■ We agree with the plaintiff that it ill-becomes the defendant at this late date to complain of the court's action when it failed to give the district court the benefit of its views at the hearing on the plaintiff's application. Be that as it may, what is a reasonable attorney's fee is a question for the determination of the district court, which must determine it on the merits of each case, taking into consideration the nature of the litigation, the amount involved in the controversy, the result of the suit, the length of time spent on the case, the care and diligence exhibited, and the character and standing of the attorney, viewed in the light of the knowledge and experience of the court as a lawyer and judge.[9] We have carefully reviewed the record and cannot say that the district court abused its discretion in fixing the amount of attorney's fees awarded in this case.

■ And we find equally without substance the defendant's objection to the allowance of interest by the district court on the amount of recovery from sixty days after the filing of the proof of loss. The district court ruled as a matter of law that under the terms of the insurance policy the amount of loss was payable sixty days after the proof of loss was received by the defendant. The defendant contends that the district court erred in so doing, but does not call to our attention any decisions in which the Florida courts have passed upon the precise insurance provision here involved. As a matter of fact no insurance cases are brought to our attention and the defendant relies upon decisions which involve actions brought for breach of contract or in tort and which, therefore, are not controlling here. It has been held in other jurisdictions that where the policy makes the insurance money payable a certain number of days after the furnishing of proof of loss, interest on the amount found due should be allowed from the expiration of that period.[10] Accordingly, in the absence of any indication that the courts of Florida have construed the provision of the insurance policy other than as construed by the district court, we cannot say that the district court erred in this regard.

The judgment of the district court is affirmed.

9. 46 C.J.S. Insurance § 1405b. See New York Cent. Mut. Fire Ins. Co. v. Diaks, 1954, Fla., 69 So.2d 786, 789; Mid-Continent Casualty Co. v. Giuliano, 1964, Fla., 166 So.2d 443.

10. See Old Colony Co-operative Bank v. Yorkshire Ins. Co., 1933, 53 R.I. 439, 167 A. 111; Security Savings & T. Co. v. Commercial Casualty Ins. Co., 1934, 147 Or. 193, 32 P.2d 582, 93 A.L.R. 409; Koyer v. Detroit Fire & Marine Ins. Co., 1937, 9 Cal.2d 336, 70 P.2d 927; First National Insurance Co. of America v. Norton, 10 Cir. 1956, 238 F.2d 949, 952.