OTHO E. HARRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 4908-76.
United States Tax Court
T.C. Memo 1978-332; 1978 Tax Ct. Memo LEXIS 180; 37 T.C.M. (CCH) 1370; T.C.M. (RIA) 78332; August 23, 1978, Filed *180 Held, the amount of P's deductible loss resulting from a theft determined. Held, further, P is entitled to deduct his travel, meal, and lodging expenses to the extent they were incurred to maintain and improve his property held for investment. James L. Fogle, for the petitioner. James C. Lanning, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 1,300.88 in the petitioner's Federal income tax for 1972 and an addition to tax of $ 20.02 under section 6651(a) of the Internal Revenue Code of 1954. [1] Each party has conceded certain adjustments. The issues remaining for decision are: (1) Whether the petitioner incurred a deductible loss due to theft during 1972; and (2) whether the petitioner is entitled to deduct certain travel expenses under sections 212 and 274(d). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Otho E. Harris, resided at St. Louis, Mo., at the time he filed his petition in this case. He filed his individual Federal income *181 tax return for 1972. The petitioner grew up in Charlotte, N.C. He left Charlotte in 1942 because of World War II. After the war, he attended college and received a degree in chemistry. He taught chemistry at a small college in Texas during the 1950s, and then attended the University of Pittsburgh, where he received a Ph.D. degree in Chemistry in 1960. From 1960 to 1966, he worked as a research chemist for Monsanto Chemical Co. In 1966, he accepted a similar position with Mallinckrodt Chemical Works and was so employed at the time of trial. During 1972, the petitioner's aunt, uncle, and mother still resided in Charlotte. On Friday, October 6, 1972, the petitioner traveled from St. Louis, Mo., to Charlotte, N.C., and remained there over the weekend (October trip). The petitioner made such trip primarily for the purpose of prodding a builder to complete construction of a house and to negotiate a closing. Upon arriving in Charlotte, he registered at the A-1 Motel for the weekend. Since he did not consider his belongings secure at the motel, he left most of them at his mother's home. On Saturday afternoon, October 7, 1972, someone broke into the home of the petitioner's mother *182 and stole several items. Upon discovering the theft, the petitioner and his mother immediately reported the crime to the Charlotte police department. A police report was filed in which the items stolen were listed as "food, camera, clothes, radio," and the cumulative value of such items was listed as $ 298.00. On his tax return for 1972, the petitioner claimed a loss in the amount of $ 1,256.00[2] *183 resulting from the theft. The petitioner claimed the following items were stolen, and he listed the date he purchased such items, their cost, and his loss based on their estimated fair market value prior to the theft as follows: Date of
Loss (FMV Item
Purchase
Cost
Before Theft)
Suit
12/71
$ 165.00
$ 125.00
Suit
3/72
150.00
125.00
Shirt (sport)
6/72
20.00
15.00
Shirt (sport)
6/72
20.00
15.00
Shirt (sport)
8/72
20.00
15.00
Shirt (sport)
8/72
20.00
15.00
Slacks
10/71
35.00
25.00
Slacks
10/71
35.00
25.00
Slacks
7/72
30.00
25.00
Slacks
7/72
30.00
25.00
Shoes (dress)
9/72
45.00
20.00
Shoes (lounging)
12/70
12.00
6.00
Sweater
7/71
30.00
20.00
Sweater
9/71
30.00
20.00
Camera
5/71
190.00
125.00
Radio
12/70
180.00
95.00
Cash
500.00
500.00
Total
$ 1,512.00
$ 1,216.00 In 1975, the Internal Revenue Service requested the petitioner to fill out form 4748, titled "Questionnaire - Casualty or Theft Loss." He complied with such request, except that in transcribing the items from his tax return to form 4748, he omitted the $ 500 in cash. In addition, on July 2, 1975, the petitioner, for the first time, secured a copy of the October 7, 1972 police report. He immediately informed the police officer in charge of records that the police report did not accurately reflect the items taken, nor the amount of his loss. He was permitted to file a supplemental report correcting the inaccuracies. In 1958, the petitioner purchased three unimproved building lots which were located just outside the city limits of Charlotte in Mecklenburg County, N.C., for approximately $ 5,000. Each lot was 100 feet by 500 feet. Since 1958, the petitioner has not improved these lots, but he has held them for investment purposes. Mecklenburg County ordinances state that unimproved building lots are to be kept free of brush, undergrowth, rubbish, and trash. In compliance with such ordinances, it was the petitioner's practice to clean up his property *184 twice a year: once in the late spring or early summer, and once in the late fall or early winter. During 1972, the petitioner made three trips from St. Louis to the Charlotte area in connection with the unimproved lots, and such trips were of the following durations: 1. June 30, 1972, to July 10, 1972 (July trip), 2. November 24, 1972, to December 3, 1972 (November trip), and 3. December 15, 1972, to December 26, 1972 (December trip). During the July and November trips, the petitioner spent 7 to 9 hours a day, 6 days a week, clearing the underbrush, cutting down the thick foliage, raking leaves, cleaning up whatever trash and rubbish had accumulated, and removing it all from his premises. In addition, during the November trip, the petitioner spent several days cutting up dead or fallen trees and stacking the wood neatly on his property. On Sundays, the petitioner attended church services with his mother and visited with relatives and friends. Shortly after returning to St. Louis from his November trip, the petitioner was informed that a Mecklenburg County ordinance required that all cut wood be stacked at least one foot above the ground. Since the petitioner had not complied *185 with this ordinance, he returned to Charlotte in December and restacked the wood. During his July, November, and December trips, the petitioner also stayed at the A-1 Motel, a small motel which catered primarily to transients. The motel operated a restaurant, and during each of these trips the petitioner generally purchased three meals a day at such restaurant. Since the A-1 Motel did not regularly provide its customers with receipts, the petitioner had an arrangement with the cashier, whereby each day the petitioner's expenditures for breakfast, lunch, dinner, and lodging were tabulated on an adding machine tape and then totaled. The adding machine tape was stamped with the name of the motel and the date. After the petitioner paid the bill and obtained his receipt, he indicated on each receipt next to each of the entries how such money had been spent. On his 1972 Federal income tax return, the petitioner deducted $ 1,378.86 in connection with his four trips to Charlotte as follows: Trips Expenses
July
October
November
December
Airplane fare
$ 100.00
$ 102.00
$ 80.00
$ 102.00
Meals &
lodging
240.24
73.15
219.77
271.70
Local trans-
portation
39.75
15.00
42.00
52.00
Airport
parking
12.50
3.75
11.25
13.75
Total
$ 392.49
$ 193.90
$ 353.02
$ 439.45
*186 The Commissioner disallowed the deduction because the petitioner had not demonstrated to the Commissioner's satisfaction that he was entitled to the deductions under sections 212 and 274. OPINION The first issue for decision is whether the petitioner is entitled to a deduction for a theft loss and, if so, in what amount. Section 165(a) generally provides that "any loss sustained during the taxable year and not compensated for by insurance or otherwise" is deductible. However, where, as here, the taxpayer is an individual and the loss is not incurred in a trade or business or in a transaction entered into for profit, the deduction for such loss is limited by section 165(c)(3) which provides: (c) Limitation on Losses of Individuals.-- In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(3) losses of property not connected with a trade or business, if such losses arise * * * from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 100. * * * Under the regulations, the maximum amount of loss which can be taken into account *187 for purposes of section 165(a) is limited to the lesser of the fair market value of the property immediately before the theft minus its fair market value immediately after the theft or its adjusted basis. Secs. 1.165-8, 1.165-7(a) & (b), Income Tax Regs.Such regulations expressly provide that the fair market value of stolen property immediately after the theft is zero. Sec. 1.165-8(c), Income Tax Regs.
The Commissioner does not dispute that a theft did in fact occur on October 7, 1972, and that certain of the petitioner's belongings were taken.Instead, the Commissioner argues that the petitioner is not entitled to a loss deduction because he has failed to prove what items were taken. Alternatively, the Commissioner argues that nothing is deductible because the petitioner has failed to establish the amount of his loss. We disagree. By his testimony, the petitioner very systematically established what items were taken, when they were purchased, and their cost. We found such testimony to be honest, forthright, and unequivocal. The petitioner is an upstanding member of his community, and the Commissioner has given us no reason to doubt the petitioner's integrity or honesty. Moreover, *188 such testimony was consistent with the petitioner's treatment of the items on his tax return, in an affidavit which he gave to the IRS, and with one exception, on form 4748. Accordingly, we conclude that the items listed in our findings of fact were in fact stolen from the petitioner on October 7, 1972. The Commissioner urges us to reach the opposite conclusion by emphasizing the petitioner's failure to include the $ 500 in cash on form 4748 and the police report. However, the petitioner explained that he had such a large amount of cash with him because he anticipated incurring certain costs in connection with the house closing and because banks in Charlotte were closed on weekends. In addition, he had intended to make cash gifts to his aunt and uncle. In view of this testimony, we are satisfied that the petitioner simply failed to transcribe the cash item from his tax return to form 4748. As to the police report, the petitioner's prompt action in taking measures to correct its inaccuracies and his honest and unequivocal testimony regarding the theft in general, and the police report in particular, convince us that the report, and not the petitioner, was in error. The Commissioner *189 vigorously disputes the petitioner's estimates of the value of the stolen property. The petitioner's opinion of the value of such property is admissible, even though he lacks expertise in valuing property; his lack of expertise goes merely to the weight to be given to his testimony. Rule 701, Fed. R. Evid.; Berkshire Mutual Insurance Co. v. Moffett,378 F.2d 1007, 1011 (5th Cir. 1967); Caten v. Salt City Movers & Storage Co.,149 F. 2d 428, 433 (2d Cir. 1945); 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 716, p. 56 (1970 rev.). The petitioner has the burden of proving that he is entitled to the deductions claimed by him. Welch v. Helvering,290 U.S. 111 (1933); Botwinik Brothers of Mass., Inc. v. Commissioner,39 T.C. 988, 998 (1963). However, under Cohan v. Commissioner,39 F. 2d 540, 544 (2d Cir. 1930), where we are convinced that there is in fact a theft loss, we can estimate the amount thereof. Jones v. Commissioner,24 T.C. 525, 528-529 (1955); Miller v. Commissioner,19 T.C. 1046, 1048 (1953). Although we are satisfied that the petitioner's estimates are largely correct, we cannot accept his valuation of the clock-radio, and we think that *190 the values of several other items were slightly overstated. After carefully reviewing each item, it is our judgment that the total value of the stolen property was $ 1,054, and we hold that the petitioner sustained a loss in that amount in 1972. The second issue for decision is whether the petitioner is entitled to deduct his traveling expenses under sections 212 and 274(d). Section 212 provides in relevant part: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- * * (2) for the management, conservation, or maintenance of property held for the production of income; * * * Under the regulations, expenses "must be reasonable in amount and must bear a reasonable and proximate relation to * * * the management, conservation, or maintenance of property held for the production of income" to be ordinary and necessary. Sec. 1.212-1(d), Income Tax Regs.; Bingham's Trust v. Commissioner,325 U.S. 365 (1945); Kinney v. Commissioner,66 T.C. 122 (1976). Section 274(d), in pertinent part, provides: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any *191 traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * * (C) the business purpose of the expense or other item, * * * See sec. 1.274-5, Income Tax Regs. Under the regulations, the petitioner is required to substantiate the amount, time, place, and business purpose of his travel expenses "by adequate records or by sufficient evidence corroborating his own statement." Sec. 1.274-5(c)(1), Income Tax Regs. To meet the "adequate records" requirement, a taxpayer must maintain an account book, diary, statement of expense, or similar record prepared contemporaneously with the expenditure and, in certain situations, produce documentary evidence, which together establish each element of an expenditure. Sec. 1.274-5(c), Income Tax Regs.; Sanford v. Commissioner,50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). In the absence of adequate records, a taxpayer may alternatively establish an element of an expense: (i) By his own statement, *192 whether written or oral, containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is * * * the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is * * * the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. [Sec. 1.274-5(c)(3), Income Tax Regs.] Sanford v. Commissioner,supra;Ashby v. Commissioner,50 T.C. 409 (1968). The petitioner now concedes that his travel expenses incurred on his October trip are not deductible. The Commissioner disallowed the deductions for the other three trips on three grounds: (1) The petitioner failed to demonstrate the expenses were ordinary and necessary; (2) the petitioner failed to demonstrate that the expenses were incurred to manage, conserve, or maintain his property; and (3) the petitioner failed to adequately substantiate *193 his expenditures for meals and lodging. [3] We disagree as to the July and November trips. The petitioner was required under certain ordinances of Mecklenburg County to keep his unimproved property free from brush, dead trees, undergrowth, rubbish, and trash, or be subject to a penalty. Since the petitioner had not been successful in his attempts to employ someone to take care of his property, his only viable alternative was to travel to Charlotte and do the work himself. The need to comply with such ordinances makes his travel expenditures during his July and November trips both ordinary and necessary. The Commissioner argues that the amount spent by the petitioner during the July and November trips was unreasonable, relying principally on his contention that the three unimproved lots had an assessed value in 1972 of only $ 1,830.[4] However, the petitioner purchased the land for approximately $ 5,000 in 1958. From then to 1972, the surrounding area experienced considerable growth. For example, the University of North Carolina opened a new campus in Charlotte, near the petitioner's property. *194 Based in part on purchase offers, the petitioner valued his land in excess of $ 30,000.Though we do not necessarily agree with the petitioner's valuation, it is clear to us that 150,000 square feet of land which was purchased for approximately $ 5,000 in 1958 and which is located in a residential area experiencing growth is worth much more than $ 1,830. Accordingly, we find the expenditures reasonable. We are also persuaded that the primary purpose of the petitioner's July and November trips was to maintain his investment property.He testified that because of the climate and rainfall in Charlotte, the foliage on his property grew uncontrollably during the spring and summer months. To properly maintain his property, he was required to work 7 to 9 hours a day, 6 days a week, during both of such trips. In addition to clearing the underbrush and removing trash and rubbish from his property, the petitioner cut down several dead trees. The only evidence which detracts from the petitioner's *195 testimony is the fact that his relatives lived in Charlotte and that his trips occurred over traditional family holidays. Though the petitioner does not deny that he spent some time visiting relatives, especially on Sundays, it is clear to us from his uncontradicted testimony, which we see no reason to disbelieve, that he spent the great majority of his time maintaining his investment property. Finally, the petitioner has sufficiently substantiated his expenditures for meals and lodging under the "sufficient evidence" standard. By his testimony, he established the amount, date, place, and business purpose of the expenditures. In addition, he obtained receipts for his expenditures which we are convinced are authentic, albeit somewhat unorthodox. Such receipts corroborate the amount, date, and place of the expenditures. His investment property and the Mecklenburg County ordinances adequately corroborate the business purpose of the expenditures. Accordingly, we hold that the petitioner is entitled to deduct the expenses incurred3n his July and November trips. As to the December trip, we reach the opposite conclusion. According to the petitioner, he could properly maintain his property *196 by cleaning it twice a year. Admittedly, his failure to properly stack the wood required that the wood be restacked. However, it does not follow that it was reasonable, ordinary, and necessary for the petitioner to incur $ 439.45 of expenses over 11 days to restack such wood. In addition, under these facts, we cannot conclude that the primary purpose of the December trip was to maintain his investment property. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. At the trial, the petitioner conceded that he had made a $40 mathematical error in computing his loss and that his actual loss was $1,216.
3. The parties have stipulated to the amount, time, and place of the costs for transportation.↩
4. Such figure represents the assessed value of the petitioner's three unimproved lots and the assessed value of one improved lot of similar dimensions which apparently was not subject to the ordinances.↩