PER CURIAM.
The appellants were the owners of a building in the City of Miami, in which they operated a 5 & 10 cent store. While insured against loss by fire under a policy written by the appellee, the building was partially destroyed by fire. The damaged portion was restored by the owners at a cost of approximately $50,000. This action was by the owners against the insurer to recover the loss.
The amount of coverage, or, as designated in the policy, the limit of liability was $90,000. The coinsurance percentage applicable was stated in the policy to be 100. The insurance provided for by the policy was to cover “actual cash value.”
The trial court entered judgment in favor of the plaintiff owners against the defendant insurer for $24,466.30, together with certain interest and costs.
The plaintiffs appealed, contending the amount of judgment was inadequate. Specifically the appellants argued that the court committed error by reducing the cost of repair by a percentage of depreciation *477 determined by the court; by further reducing that amount by a substantial deduction for coinsurance which the trial court found to be applicable; and by failing to allow and include in the judgment certain additional recoverable expenses not related to value of the damaged property, which were established in evidence.
We find no error in the application by the court of depreciation. The record discloses that upon consideration of the conflicting evidence, including opinion evidence, as to the reasonable cost of repair of the damaged portion of the building, the trial court concluded that the cost thereof was $48,500, and that the court applied depreciation of one third, reducing the replacement cost figure to $32,350. In support thereof in the judgment the court cited New York Cent. Mut. Fire Ins. Co. v. Diaks, Fla. 1954, 69 So.2d 786; Worcester Mutual Fire Insurance Co. v. Eisenberg, Fla.App.1962, 147 So.2d 575; McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902. The action of the trial court in applying the depreciation against the cost of repair was in accordance with the decisions cited as a means of determining the amount of the loss.[1]
The contention of the appellant that the trial court incorrectly found and applied a coinsurance factor, has merit. The defendant sought to establish the value of the building by witnesses who gave opinion testimony as to the amount it would cost to replace the building. On the basis of those replacement cost estimates the trial court determined the value of the building at the time of the fire was $119,000. We hold that in so concluding the trial court was in error for two reasons. First, the amount it would cost to replace or rebuild an existing building is not necessarily the cash or market value of the building, although it may be an element to be taken into consideration in determining the value. This building was approximately forty years old at the time of the loss. Secondly, and we feel conclusive on the point, there was uncontradicted testimony of one of the plaintiffs that upon the issuance of the initial three year policy in 1966 the building was inspected by the insurance agent and two representatives of the insurance company, at which time the agent agreed with the plaintiff owner that the value of the building was approximately ' $80,000 to $85,000, and that insurance thereof for $90,000 would represent full coverage which was to be provided by the policy. Also, there was uncontradicted testimony that when the (three year) policy was renewed in 1969 the agent again inspected the property with one of the owners and agreed that the value of the building was somewhat less than when initially insured, and that insurance thereof for $90,000 would be full coverage.[2]
*478 In view of that showing in the record that the policy limit of $90,000 for which the property was insured equalled or exceeded the value of the property as determined and agreed upon by the insurer and the owner when the policy was issued, and renewed in 1969, there was no basis for application of any coinsurance factor. However, the trial court applied a coinsurance percentage of 24.37 percent, thereby further reducing the amount from $32,350 to $24,466.30. We hold the latter reduction for coinsurance was unjustified, and that the allowable loss amount was that fixed by the court, with the benefit of depreciation, at $32,350.
We hold also that the court was in error for not having included in the judgment the additional expenses of the owners, not subject to a reduction for depreciation, which amounted to the aggregate sum of $1,493.59.[3]
By petition for rehearing the plaintiffs sought to have said items included in the judgment. The trial court amended the judgment to increase it by the sum of $674 by reason thereof, with no explanation or reason shown for not giving the plaintiffs the benefit of recovery of all said admitted items. We hold that the plaintiffs were entitled to recover the additional sum of $819.59, making up the total of $1,493.59.
Accordingly the cause is remanded to the circuit court, with direction to amend the judgment to allow the plaintiffs the said sum of $32,350, plus the said sum of $1,493.59, with interest on those amounts from July 5, 1970, plus the costs allowed. The judgment upon being so amended, shall stand affirmed.

. The Florida Statute relating to property insurance contracts, § 027.0801(2), F.S. A., provides that in the case of partial loss by fire the liability of the insurer “shall be for the actual amount of such loss” (not to exceed the policy limit).

. The testimony referred to was ns follows : “Mr. Alvin: I might point out to Your Honor that there were two policies; one written in 1966 and tins was a renewal policy in 1969. A When Mr. O’Day [the insurance agent] came out, did he inspect tlie premises before the policy was written? A Yes, he did. Q Did he have anyone else from Liberty Mutual inspect the premises before the policy was written? A Yes. He had — I think they call them the engineers of insurance — Q How many? A At least two. A During the negotiations with the company and the agent in the writing of this policy, did the question of the limits of liability come up between you and Mr. O’Day? A Yes, they did. Q AVill you tell us what the conversation was in reference to how much limits of liability you wanted to carry? A Mr. O’Day asked me how much liability I wanted to carry, and I asked him to explain it, so he said, ‘Well, what do you value the building at?’ At that time I figured the building was worth approximately 110, 120 thousand dollars less whatever the land value would be, the foundation, so we figured that the land would be worth probably 30, 40 thousand dollars, so subtracting that from the 110, 120, we figured 80 to 85 thousand dol *478 lars would be sufficient coverage, so ice decided io make it $90,000, to what ice-considered 100 percent coverage, and he agreed to that, so that’s ichat they did. * * * Q When that policy expired in 1969 or whenever it was, were you again contacted by the agent of the defendant? A Yes, I was. Q Was there again a discussion with reference to the limits of liability? A Yes, there was. Q Will you tell us what that discussion was? A He asked me if we figured that there was any difference in the value of the property, and I told him, yes, that the neighborhood had changed, it was turning colored, and that the values were actually down. Q Did you both agree at that point that it was adequate because the value had not gone up? A That’s correct, so we decided to make the same amount of liability, feeling we would be covered.” [Italics supplied.!

. The items making up that sum, as listed on the proof of loss, were: temporary repairs, $419.59; repainting sign on rear of building, $150; replacement fire extinguishers, $304; burglar alarm system, $400; and city license, voided for one-lialf year as result of the fire, $200. Each of those items when referred to in evidence was admitted by the defendant to be recoverable.