148 So.2d 38 (1962)
Bessie Elizabeth STREET, Appellant,
v.
SAFWAY STEEL SCAFFOLD COMPANY, a Corporation, Appellee.
No. D-299.
District Court of Appeal of Florida. First District.
December 20, 1962.
Rehearing Denied January 9, 1963.
*40 Searcy & Sulik, Jacksonville, for appellant.
Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellee.
RAWLS, Judge.
LeRoy Street died while in the employment of Southwestern Engineering Company due to injuries received when shoring equipment collapsed in the process of pouring concrete for the second floor of a building Southwestern was constructing. Street's widow, plaintiff-appellant, collected workmen's compensation from Southwestern's carrier, and is now seeking damages from Safway Steel Scaffold Company, on the theory that it is liable as a third party tort-feasor. Safway defended primarily on the ground that it was a subcontractor of Southwestern, so appellant's exclusive remedy was under the Workmen's Compensation Act. The trial court determined that Safeway was a subcontractor and entered a directed verdict in its favor. We agree.
Appellant appeals on the theory that Safway's contract with Southwestern was for the furnishing of professional services and the rental of equipment, and, therefore, it cannot be a subcontractor within the meaning of the Workmen's Compensation Act.
U.S. Gypsum Company awarded to Southwestern a prime contract which called for the engineering and construction of a paper mill in Jacksonville. The prime contract encompassed considerable engineering services and the supplying of shoring equipment adequate for pouring a suspended concrete floor. Southwestern contracted with Safway to (1) design and supply plans for the layout of the shoring equipment, (2) furnish (rent) all necessary shoring equipment to Southwestern, (3) inspect the erection of the shoring equipment (Southwestern furnished the labor for erection) prior to each pour of concrete.
Southwestern failed to provide Safway with accurate plans of the elevations of the first floor. Among other things the plans furnished Safway and used by it while planning the original design for the shoring, failed to show a sewer pit, approximately 19' x 10' x 7', recessed in the first floor. Although the pit was discovered by Safway's inspector prior to making the pour on the second floor increment over the pit, the evidence was conflicting as to whether Safway was to redesign the shoring in and over the pit or whether Southwestern assumed the responsibility to "crib" the pit and shore above it.
While the third increment of the second floor was being poured, the shoring over the pit collapsed and LeRoy Street was killed.
The sole question presented is whether Safway is a subcontractor, for if it is, the remedy under the Workmen's Compensation Act is exclusive, but if it is not a subcontractor, it may be liable to the plaintiff as a third party tort-feasor.
Appellant insists that engineering services could not be the subject of a subcontract under the Workmen's Compensation Act, and she relies upon Goldstein v. Acme Concrete Corporation[1] wherein the Supreme *41 Court speaking through Justice Drew applied the definition of "materialman" as found in the Mechanics' Lien Law, F.S. Chapter 84, F.S.A. to the Workmen's Compensation Act and concluded that a materialman was not a subcontractor. By the same token appellant contends that prior to the specific inclusion of engineering and architectural services in the Mechanics' Lien Law, these professions had no liens as contractors, subcontractors or laborers,[2] and, therefore, engineering services could not be the subject of a subcontract under the Workmen's Compensation Act.
The persuasiveness of this argument falls upon the very foundation upon which it was built. The Goldstein case was careful to point out that mechanics' liens statutes are not decisive of questions arising in workmen's compensation cases, but since the two chapters are in a broad sense in pari materia, they should, "to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together."
The Mechanics' Lien Law is limited by its terms to improvements to real property whereas the Workmen's Compensation Act covers all "employment" except services specifically exempt. It is only in the field of building construction that the two laws bear any similarity, and definitions borrowed from the Mechanics' Lien Law and applied to Workmen's Compensation Act must necessarily be only those which would apply in like manner to many other fields of employment and contracting. Thus, the distinction between "materialmen" and "subcontractors" would be the same whether the contract was one for construction, printing or other types of services. Although the distinction between "labor" and "engineering services" is important in the Mechanics' Lien Law, it is relatively immaterial in the Workmen's Compensation Act where emphasis is placed on "employees". Therefore, we conclude that services which are not listed among the types of employment exempted in F.S. § 440.02(1) (c), F.S.A. can be the subject of a subcontract.
Appellant also contends that Safway was either a materialman or its contract was one primarily for rental of equipment, and in either case Safway would be a third party tort-feasor since it did not perform any actual construction "labor". As authority for this position appellant cites Goldstein v. Acme Concrete Corporation[3] and Smith v. Poston Equipment Rentals, Inc.[4]
The test of relative value of labor and material was applied in the Goldstein case which held that Acme Concrete Corporation was a materialman since it performed no actual labor upon the job and, therefore, it was liable as a third party tort-feasor for injuries sustained by the general contractor's employee due to negligence in the operation of the concrete mixer truck while it was making a delivery of ready-mixed concrete to a construction job. In that case the general contractor's original contract was one for the construction of a housing project and any agreement the general contractor had with Acme was merely for the purchase and delivery of materials. The negligence complained of was in Acme's delivery of these materials to the job site. It should also be noted that the services normally rendered by a concrete company are such that if the company did undertake a subcontract on a construction job, such subcontract would involve the rendering of "labor" of the type Mr. Justice Drew listed on page 204 of 103 So.2d  "tamping, leveling, smoothing or finishing the concrete or the removal of the forms after it had set."
In Smith v. Poston Equipment Rentals[5] it was held that an employee of a general *42 contractor under a construction contract could not maintain an action against Poston Equipment Rentals for injuries sustained due to negligence of a crane operator who together with the crane and flagman had been leased by the defendant to the general contractor. There it was held that since the men who were part of the rental contract were actually engaged in the construction process and under the direction of the general contractor, they were, therefore, statutory fellow servants under a common employer.
The Workmen's Compensation Act applies to all employment unless specifically exempt. It requires contractors to provide coverage for their employees and places upon contractors the responsibility of coverage for employees of subcontractors. Failure to comply with these requirements carries heavy statutory penalties, but compliance grants to the contractor and to his subcontractors the privilege of exclusive remedy. The true test is whether Southwestern was required under the act to be responsible for coverage for employees of Safway engaged in the contract work because the immunity of exclusive remedy follows the statutory duty to provide coverage and a contractor's immunity inures to his subcontractors.[6]
The mere leasing of equipment or the mere sale and delivery of materials to a general contractor would not grant the privilege of exclusive remedy to the lessor or vendor because § 440.10 does not impose upon a general contractor the duty to secure compensation to employees of lessors or vendors even though a vendor may render some services or labor in delivering materials to the job site.
The word "subcontractor" is not defined in the Act, but § 440.10, F.S.A., provides:
"In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business * * *."
With reference to the above section, Chief Justice Roberts, speaking for the Supreme Court stated in Jones v. Florida Power Corporation[7] on page 289:
"* * * [T]he clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. To `sublet' means to `underlet', Webster's New International Dictionary; in the context in which it is here used, the effect of subletting is to pass on to another an obligation under a contract for which the person so `subletting' is primarily obligated."
Here the prime contract provided for Southwestern to perform engineering services. A part of these engineering services was "sublet" to Safway. The negligence alleged in the complaint was negligence in the rendering of these engineering services  specifically, designing and on the job inspection service. Under these facts would Southwestern be required to secure payment of compensation to employees of Safway? We conclude that it would. There exists here not only a subletting of a part of the prime contract but also the two decisive elements named by Mr. Justice Roberts in Miami Roofing & Sheet Metal Company[8] i.e., a "common employer" and "engaged in the same contract work". It matters not that Safway's employees were responsible only to Safway since Safway was liable under its contract to Southwestern. Both plaintiff's decedent and Safway's employees had a "common *43 employer" and were engaged in work under the same prime contract. By virtue of § 440.10 they were statutory fellow servants.
The judgment of the trial court is affirmed.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.
NOTES
[1] Goldstein v. Acme Concrete Corporation, 103 So.2d 202 (Fla. 1958).
[2] Palm Beach Bank & Trust Co. v. Lainhart, 84 Fla. 662, 95 So. 122 (1922).
[3] See Footnote 1.
[4] Smith v. Poston Equipment Rentals, Inc., 105 So.2d 578 (Fla.App.3d, 1958).
[5] Ibid.
[6] Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840 (Fla. 1950).
[7] Jones v. Florida Power Corp., 72 So.2d 285, 289 (Fla. 1954).
[8] See Footnote 6.