465 So.2d 1314 (1985)
ACME OIL and Self Insured Services, Inc., Appellants,
v.
Thomas C. VASATKA and State Farm Insurance Company, Appellees.
No. AX-225.
District Court of Appeal of Florida, First District.
March 15, 1985.
Rehearing Denied April 18, 1985.
*1315 Robert C. Cooper and Robert A. Donahue of Cooper, Rissman & Weisberg, P.A., Orlando, for appellants.
R.W. Simmermon of Simmermon & Farrell, P.A., Orlando, for appellee Vasatka.
Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, Orlando, for appellee State Farm Ins. Co.
MILLS, Judge.
Acme appeals from a workers' compensation order awarding Vasatka TTD benefits. It contends the deputy erred in finding Vasatka was its employee or in the alternative it was the statutory employer of Vasatka and erred in finding that State Farm was not required to provide workers' compensation coverage to Brickner. We reverse.
Vasatka was a night clerk at a self-service gas station. He was injured during a robbery.
The station was owned by Acme and managed by Brickner. Acme owned the land, gas pumps, building, sign and gas *1316 products. Acme set the price of gas and the hours the station operated. Its representative visited the station daily to collect the cash receipts and to inspect the station for cleanliness.
Brickner was regarded as an employee of Acme, was on its payroll and was covered by its workers' compensation. He was required to hire his assistants and was required to cover them by his workers' compensation policy. He hired his employees, scheduled their hours, supervised their work and paid them. He withheld their federal income tax and social security and he appeared as their employer on their W-2 forms. The station was run under his name and the occupational and beer licenses were in his name. Brickner's employees viewed Acme as his boss.
In an attempt to obtain workers' compensation coverage for the station's workers, Brickner contacted Martin, an agent with State Farm Insurance Company with whom he had dealt in the past for the purchase of personal home, life and automobile insurance, all State Farm policies. Martin represented himself as a State Farm agent and, in fact, could write for no other company, pursuant to his contract with State Farm, except the Florida Joint Underwriters Association and the National Flood Program. Martin never told Brickner that he represented anyone but State Farm.
Martin told Brickner that he was not sure that State Farm would write the policy, and that perhaps it would have to be obtained through an assigned risk program. Brickner had no idea of the difference between State Farm and assigned risk but presumed the latter was through State Farm in some way. He believed Martin to be representing State Farm. Martin never told him the policy could not be placed with State Farm or that it would have to go through assigned risk.
Martin took an application from Brickner in July 1982 which was captioned "Florida Joint Underwriters Association" along with a binder check for $120. The check was negotiated, but Martin made no attempt to process the application until late March 1983. He could offer no explanation for this failure. Brickner made numerous inquiries of Martin as to the status of his policy and in January 1983 requested additional coverage for a second station. Martin never told him he was not covered even when Brickner called to notify him of Vasatka's accident. Martin never made Brickner aware of the processing delays and agreed that Brickner thought he had done what was necessary to get him workers' compensation coverage.
After Vasatka's injury on 6 April 1983, Acme's carrier, Self Insured Services, Inc., began paying TTD benefits to Vasatka and referred him to a physician for his injuries. The payments ceased on 4 June 1983. On 12 July 1983, Vasatka filed a claim for TTD from 4 June and continuing costs, interest, penalties and attorney's fees. Acme filed a notice to controvert claiming that Vasatka was not its employee, but was Brickner's. Acme also filed a claim for reimbursement for all compensation and medical expenses paid by it on the ground that State Farm was the responsible carrier.
Martin was contacted by Brickner after Vasatka complained of the treatment received from the physician to whom Acme sent him, and Martin referred Vasatka to another physician and made the appointment for him. Martin claims that this was not done on his own or State Farm's behalf but because he believed Florida Joint Underwriters Association would eventually cover any expenses incurred by his actions.
The decisive question in determining the existence of an employer/employee relationship is the degree of control which the putative employer exercises over the person or who has the right to direct what shall be done and how and when it shall be done. La Grande v. B & L Services, Inc., 432 So.2d 1364 (Fla. 1st DCA 1983).
Vasatka applied for the job with Brickner, not Acme. Brickner alone hired and fired the station's employees. Brickner was the only one telling Vasatka what to do and how to do it. Brickner scheduled his hours, paid him and supervised his *1317 work. Vasatka reported directly to Brickner and considered himself Brickner's employee. Acme had no contact with Vasatka at all. Acme's actions in owning the station, setting gas prices and visiting daily to collect money do not equal the kind of control over Vasatka that would justify concluding that Acme was his employer.
In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment... .
Section 440.10(1), Florida Statutes (1981).
To be a contractor under this statute, one must have a contractual obligation to perform some work for another. Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910, 914 (Fla. 1981). Once contractor status is shown, then it must be demonstrated the contractor has passed on to another an obligation under the contract for which the person so subletting is primarily obligated. Street v. Safway Steel Scaffold Company, 148 So.2d 38 (Fla. 1st DCA 1962).
Acme was not shown to have any contractual obligation to perform work for another, a part of which it sublet to Brickner. Brickner was performing Acme's own work, not part of Acme's work for another. This circumstance defeats a claim under Section 440.10(1). South Seas Plantation, Ltd. v. Acevedo, 387 So.2d 1035 (Fla. 1st DCA 1980); Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954); and Foulk v. Perkins, 181 So.2d 704 (Fla. 2d DCA 1966). Therefore, it was incorrect under the facts of this case to conclude that Acme was Vasatka's statutory employer.
The facts in this case reflect that Brickner knew in July 1982 when he requested workers' compensation coverage from him that State Farm's agent, Martin, was an exclusive agent not permitted by contract to write for other companies. He had previous dealings with Martin, purchasing three personal policies from him, all of which were issued by State Farm. Martin never told Brickner he wrote for any other company. Martin did mention that State Farm might not issue the policy and that they might have to go through Florida Joint Underwriters Association. However, the record also reflects that Brickner did not understand that Florida Joint Underwriters Association was not part of State Farm, nor did Martin attempt to correct this mistaken assumption. Further, Martin never told Brickner that State Farm would not write the policy. Martin took an application from Brickner entitled Florida Joint Underwriters Association and took Brickner's check for $120 as a binder. But given Brickner's misconception, this circumstance would not have necessarily told him that State Farm was not involved. Martin did not process the application for eight months despite negotiating Brickner's check. Martin never revealed the processing delays to him despite numerous inquiries from him regarding the policy status, not even when Vasatka's claim was reported to him by Brickner. Martin agreed that Brickner was entitled to believe he had workers' compensation coverage and, in fact, took steps toward handling Vasatka's claim by arranging medical care for him. Under these circumstances, the deputy was incorrect in holding State Farm not liable for workers' compensation coverage.
An agent can contract for insurance so as to bind his company if he has the real or apparent authority to do so, and the insurer is bound by the acts of its agent if they are within the scope of his apparent authority and the insured is not aware of any limitation thereon. No special inquiry into the powers of the agent need be made unless the insured should have reason to do so. An agent possesses powers conferred on him by his principal, or such as third parties are entitled to *1318 assume he possesses under the circumstances. Russell v. Eckert, 195 So.2d 617 (Fla. 2d DCA 1967). Here, Brickner's past dealings with Martin had all involved State Farm. Brickner knew Martin was an exclusive State Farm agent and Martin conceded Brickner was never informed that policies might be written for other companies or entities. Martin expressed doubts that State Farm would write the policy but never informed Brickner it would not and led Brickner to reasonably believe he was covered, despite knowing he was not. Under these circumstances, Brickner was entitled to assume that Martin had procured a State Farm policy which was in force. Martin's actions in allowing Brickner to believe this bound State Farm notwithstanding its contention that it knew nothing of Martin's acts. The actions of an agent performing within the scope of his real or apparent authority are binding upon his principal, regardless of whether the principal had knowledge of the agent's action. Fidelity & Casualty Co. of New York v. Britt, 393 So.2d 41 (Fla. 3d DCA 1981).
When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the deputy commissioner shall have jurisdiction to adjudicate such controversy; and if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the deputy commissioner shall have jurisdiction to order such reimbursement; however, if the carrier finally determined liable can demonstrate that it has been prejudiced by lack of knowledge or notice of its potential liability, such reimbursement shall be only with respect to payments made after it had knowledge or notice of its potential liability.
Section 440.42(3), Florida Statutes (1982).
Because Self Insured Services, Acme's carrier, paid some benefits to Vasatka, it is entitled to reimbursement. However, because State Farm must be given an opportunity to demonstrate prejudice by lack of knowledge or notice of its potential liability, we remand with instructions for the deputy to hold such a hearing.
Because of our holding, we reverse the deputy's finding that Acme and Self Insured Services, Inc. are responsible for interest, costs and attorney's fees.
BARFIELD, J., concurs.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
I respectfully dissent. There is competent substantial evidence supporting the deputy commissioner's determination that claimant was Acme's employee. The evidence reflects that Brickner was an employee of Acme. Claimant was hired by Brickner to do the work that Brickner was hired by Acme to do. There was evidence that claimant was told by Brickner that Acme personnel were Brickner's supervisors and that the station had to be clear for Acme visits. There was no lease. Brickner had workers' compensation provided by Acme and Acme personnel visited the station daily. Acme set the gas prices and the hours that the station would operate. The deputy commissioner should be affirmed as this court should not substitute its factual determination for that of the deputy commissioner where there is competent substantial evidence to support the deputy. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).