490 So.2d 149 (1986)
UNDERWRITERS INSURANCE COMPANY, et al., Appellants,
v.
Catherine KIRKLAND, Appellee.
WHITMAN & WHITMAN, INC., Appellant,
v.
UNDERWRITERS INSURANCE COMPANY, Appellee.
Catherine KIRKLAND, Appellant,
v.
WHITMAN & WHITMAN, INC., Appellee.
Nos. BF-499, BG-31 and BH-435.
District Court of Appeal of Florida, First District.
June 12, 1986.
Rehearing Denied July 11, 1986.
*151 John N. Bogdanoff, of Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Daytona Beach, for Underwriters Ins. Co.
Thomas R. Jenkins, of Beggs & Lane, Pensacola, for Whitman & Whitman, Inc.
Robert R. McDaniel, Pensacola, for Catherine Kirkland.
SHIVERS, Judge.
This is a consolidated appeal of three cases. We affirm in part, reverse in part, and remand as to Case No. BF-499, and reverse as to Case No. BG-31. It is unnecessary for us to address Case No. BH-435.
On 12/15/81 Plaintiff/Kirkland purchased a policy of homeowners insurance through Defendant/Whitman & Whitman, Inc. (hereinafter Whitman), agents for Defendant/Underwriters Insurance Company (hereinafter Underwriters). Since Kirkland was unable to pay the full premium amount at the time of the purchase, Whitman arranged for her to finance the premium by making monthly payments of $18 to Capital Premium Finance Corporation. After issuance of the policy, it was determined that Kirkland's home was worth more than originally thought and Underwriters required Kirkland to purchase additional insurance. Accordingly, a second policy was issued by Whitman, effective 4/20/82 through 4/20/83 with coverage on the dwelling in the amount of $44,000. Rather than send a check for the total premium amount, Whitman arranged for Kirkland to wait until she received a refund of the unearned premium on the first policy ($85.00) then use that amount as a downpayment on the second policy. The remainder would be financed through the Whitman agency at $30 per month. On or about 5/18/82, Underwriters issued the new policy, effective 4/20/82, and forwarded a copy of the policy to Whitman, along with an invoice for the premium amount of $170.
Linda Whitman of the Whitman agency testified at trial that in late May, 1982, she received a phone call from Sonny Martin, an employee of Underwriters. According to Whitman, Martin instructed her that Underwriters had changed their billing procedure and that premium checks should no longer be submitted with each application for new insurance but that agents would be billed by Underwriters on a monthly basis. Based on her belief that she would be billed later, Whitman failed to forward any premiums to Underwriters on the second policy. In fact, Whitman testified that the only payment made by Kirkland to Whitman between 4/20/82 and 8/82 was one $18.33 payment made on 5/26/82. Sonny Martin denied having told Whitman not to send premiums, and testified that he would only have had the authority to explain forthcoming changes in billing procedures to agents. Whitman received a copy of Underwriters' written directive dated 6/1/82 informing agents that the new billing procedure would become effective as to new business obtained after 7/1/82 and as to renewals obtained after 9/1/82. Andrea Redini of Underwriters testified that Kirkland's second policy would be classified as a rewrite as opposed to either a renewal or new business and, thus, the new billing procedure did not apply at all to the second policy.
On 7/7/82, Underwriters mailed Whitman a cancellation notice, stating that the policy would be cancelled effective 7/22/82, as well as a credit memo for the premium amount of $170. Kirkland was directly notified of the planned cancellation through her mortgage holder, FHA, which had been notified by Underwriters. Whitman also *152 received cancellation notices on several other policies issued through their office. Linda Whitman then contacted Underwriters, sometime in August of 1982, to inform them that none of the policies should be cancelled and to request that Underwriters send a list of policyholders in cancellation status so that Whitman could pay the premiums on the policies. Kirkland's name did not appear on the list provided by Underwriters because Kirkland's policy had already been cancelled and was thus not in cancellation status. Whitman paid the premiums for the policies on Underwriters' list but, since she assumed that Underwriters would bill her later, she did not send a check for Kirkland's policy. Sometime in August 1982, Kirkland endorsed over to Whitman the $85 refund check from the first policy (which was credited to Kirkland's account with Whitman). After that, she continued to make monthly payments of $30 to Whitman until the premium was paid.
On 1/11/83, Kirkland's home was destroyed by fire and Underwriters denied coverage on the basis that the policy had been cancelled, effective 7/22/82, for nonpayment of premiums. Kirkland then brought suit against Whitman and Underwriters, claiming (1) that Whitman was negligent in failing to obtain and/or maintain the homeowner's policy requested by Kirkland, and (2) that in the event the policy was found to be in force, Underwriters failed to pay the proceeds following the fire. Underwriters cross-claimed against Whitman, seeking contribution and/or indemnity in the event a policy was found to exist and alleging breach of the agency agreement it had with Whitman. Whitman counterclaimed against Underwriters, seeking contribution and/or indemnity. Trial was held on all issues on 2/4-2/6/85 and the jury returned a verdict finding: (1) that the policy was in effect at the time of the fire; (2) that Whitman had not committed any negligence causing loss to Kirkland; (3) that Whitman had not breached its agency agreement with Underwriters; (4) that Whitman had committed negligence causing loss to Underwriters; and (5) that Underwriters had committed negligence causing loss to Whitman. Kirkland was awarded $77,944 in damages. Underwriters then moved for judgment N.O.V. and/or a new trial and Kirkland moved for attorney's fees, costs, and prejudgment interest. On 3/14/85 the trial court denied Underwriters' motion for judgment N.O.V. and/or new trial as to Kirkland but granted a new trial on Underwriters' cross-claim against Whitman, holding that the portion of the verdict finding no breach of agency agreement was contrary to the evidence and that the verdict form was confusing, inconsistent, and contained irrelevant questions. On the same day the court granted Kirkland's motion for attorney's fees, costs, and prejudgment interest.
Underwriters now appeals the final judgment (BF-499), Whitman appeals the order granting Underwriters a new trial (BG-31), and Kirkland appeals the portion of the verdict finding no negligence on Whitman's part (BH-435). Whitman cross-appeals against Kirkland in Case No. BH-435.

I. Case No. BF-499:

In this case, Underwriters appeals and raises three arguments. The first argument regards the jury's finding that the policy was in effect at the time of the fire. According to Underwriters, since the record is clear that Whitman made no payment on the policy until after the cancellation date, and since Whitman had neither express nor implied authority to either waive payment or reinstate the policy, the verdict must have been based on Whitman's apparent authority to waive payment or reinstate the policy. Underwriters acknowledges that there are numerous cases holding that an insurer is bound by the actions of its agents. However, it argues that these cases are distinguishable since Kirkland received notice of cancellation from the principal, in effect placing her on notice that Whitman had no authority to reinstate the policy.
We agree with Underwriters that Whitman had apparent authority to reinstate the policy, and affirm the finding on that *153 basis. We do not find that Whitman's authority was in any way disrupted by Kirkland's receipt of the cancellation notice from Underwriters.
An insurer is said to be bound by the acts of its agents where the acts are within the scope of apparent authority and the insured is not aware of any limitation thereon. The insured need not make any special inquiry into the agent's powers unless he has reason to do so. Acme Oil v. Vasatka, 465 So.2d 1314 (Fla. 1st DCA 1985). The evidence in this case is undisputed that Underwriters mailed Kirkland a cancellation notice on July 7, 1982, informing her that the policy would be cancelled effective July 22, 1982, unless the premium amount of $170 was paid. However, according to the trial testimony, Kirkland contacted Whitman after receiving the notice, and was assured by Whitman that the cancellation would be taken care of by Kirkland endorsing her $85 refund check over to the agency. Based on the timing of Whitman's assurances, Kirkland was given no reason to inquire into the scope of Whitman's apparent authority to continue the policy in force. Accordingly, we believe the jury's finding that the policy was in effect at the time of the fire was correct. See Parker v. South Carolina Insurance Company, 409 So.2d 106 (Fla. 4th DCA 1982).
Second, Underwriters submits that the court erred in awarding prejudgment interest on the damages to Kirkland's residence from February 25, 1983, and on her personal property damages from November 16, 1984. Instead, Underwriters argues that since Kirkland's actions against Underwriters was ex contractu in nature, and since interest in ex contractu actions is allowed from the date the debt is due, the terms of the policy itself should control. The policy of insurance between Kirkland and Underwriters states that losses are payable within 60 days after Underwriters receives proof of a loss and: (a) reaches an agreement with its insured, or (b) there is an entry of a final judgment, or (c) there is a filing of an appraisal award with the insurer.
Kirkland, on the other hand, argues that prejudgment interest is due, on the damages to her residence from the date of the fire, and on the personal property damages from the date of the stipulation between the parties determining those damages. Kirkland cites to Bergen Brunswig Corporation v. Department of Health and Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982) and Argonaut Insurance Company v. May Plumbing Company, 474 So.2d 212 (Fla. 1985) for the proposition that a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date. Further, section 627.702, Florida Statutes (Florida's "valued policy" law) provides that in the event of total loss of a structure, the insurer's liability under the policy shall be in the amount of money for which the property was insured. One of the objectives of the statute is to facilitate the prompt settlement of claims after total losses, by making it unnecessary for the insured to prove the value of the property, and by valuing the loss in the nature of liquidated damages. Springfield Fire and Marine Insurance Company v. Boswell, 167 So.2d 780 (Fla. 1st DCA 1964). Kirkland argues that when the jury determined she was entitled to the face amount of the policy, it also effectively determined that her loss was total as of the date of the fire. Therefore, interest should be payable from the date of the fire. Since the amount of personal property damages was stipulated to in advance and typed on the jury form, Kirkland submits the interest on those damages should accrue from the date of the stipulation.
We agree with Kirkland's positions. In the Argonaut case, the supreme court approved of the position adopted by this court in Bergen Brunswig. In so doing, the court was careful to explain that it was not making new law, but was reasserting the supreme court decisions of the past century, from which the court had never receded. According to those past decisions, *154 the award of prejudgment interest is based on a "loss theory," rather than a "penalty theory." Therefore, the award is unaffected by either the merit of the defense or the certainty of the amount of loss. Rather, the plaintiff must be made whole from the date of the loss once the finder of fact has determined the amount of damages and the defendant's liability therefore. See Argonaut, 474 So.2d at 215.
In the instant case, the jury determined defendant's liability for the loss at trial. The value of the loss, or the amount of damages due on the residence, was determined by the policy itself, pursuant to section 627.702. Thus, under Argonaut, Kirkland should be made whole from the date of the loss as to the damages to her residence.
Although there is authority for Underwriters' argument that prejudgment interest should be calculated from the date the proceeds are due under the policy itself,[1] those authorities are not applicable to the instant case. The policy issued to Kirkland states that losses are payable within 60 days after Underwriters receives proof of a loss and: (a) reaches an agreement with its insured, or (b) there is an entry of a final judgment, or (c) there is a filing of an appraisal award with the insurer. Since the loss was total in this case, no proof of loss was submitted to Underwriters. Therefore, the provision of the policy relied upon by Underwriters does not affect the issue of prejudgment interest.
The amount of Kirkland's personal property damages was determined by the stipulation, thus the jury verdict had the effect of liquidating those damages as of the date of the stipulation.
Since we are unable to determine from the final judgment itself which dates the trial court used to calculate the award of prejudgment interest, we remand for the court to clarify the judgment, calculating prejudgment interest on the damages to Kirkland's residence from the date of the fire, and on the personal property damages from the date of the stipulation.
The third issue raised by Underwriters involves the amount of attorney's fees awarded to Kirkland. According to Underwriters, the affidavit submitted by Kirkland's attorney, McDaniel, contained numerous entries for services rendered in connection with Kirkland's negligence claim against Whitman, and the award should thus be reduced. We disagree. The record reflects that a fee hearing was held at which both Underwriters and Kirkland submitted fee affidavits, Kirkland's reflecting fees in the range of $30-40,000 and Underwriters' reflecting a range of $13,500-15,000. After hearing the identical argument made here by Underwriters, the trial court awarded Kirkland attorney's fees of $18,500. Since the fee awarded by the court was only slightly higher than that suggested by the appellant, and since the trial court considered appellant's argument below, it does not appear that the court considered the time spent on Kirkland's claim against Whitman. Therefore, we affirm the award of attorney's fees as being within the trial court's discretion.

II. Case No. BG-31:

As to Underwriters' cross-claim against Whitman, the trial court granted a new trial on the basis that the portion of the verdict finding Whitman had not breached its agency agreement with Underwriters was contrary to the evidence, and that the verdict form was confusing and inconsistent. Whitman now appeals the order granting the new trial, arguing (1) that the verdict was consistent with the instructions given at Underwriters' request, and (2) that the verdict was supported by the evidence. We agree with appellant Whitman and reverse the order granting a new trial.
First, the record reveals that Underwriters failed to raise an objection to the verdict form. Since the use of the form *155 does not involve a fundamental or constitutional error, the failure to object constitutes a waiver of the defects, if any. Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corporation, 472 So.2d 880 (Fla. 5th DCA 1985).
Second, we do not agree that the jury's verdict was contrary to the evidence. Underwriters' cross-claim alleged that Whitman breached section 1 of the agency agreement by failing to forward premium payments collected from Kirkland. Section 1 of the agreement, however, states that agents shall collect and forward premiums "unless specifically otherwise directed." Although the evidence in the case clearly shows that Whitman did not forward the premiums collected from Kirkland, it also shows that the reason Whitman failed to do so was because she was "specifically otherwise directed" by Sonny Martin. There was likewise no evidence to support a finding that Whitman breached the agency agreement by extending credit to Kirkland. Since the manifest weight of the evidence supports the finding that no breach occurred, we find that the verdict was not contrary to the evidence.

III. Case No. BH-435:

Kirkland's appeal of the portion of the verdict finding no negligence on Whitman's part is contingent upon this court's reversal of the final judgment against Underwriters in Case No. BF-499. Since we have affirmed that verdict, we need not address her argument.
Likewise, since the cross-appeal in BH-435 is contingent upon Kirkland's direct appeal, that issue also need not be heard.
Accordingly, we hold as follows: In Case No. BF-499, we (1) affirm the finding that the policy of insurance issued to Kirkland was in effect at the time of the loss; (2) remand the order awarding prejudgment interest for clarification and modification, if, necessary, to conform with this opinion; and (3) affirm the award of attorney's fees. In Case No. BG-31, we reverse the order granting a new trial on Underwriters' cross-claim against Whitman as to breach of the agency agreement. As a result of the above holdings, we need not address the appeal and the cross-appeal in Case No. BH-435.
JOANOS and NIMMONS, JJ., concur.
NOTES
[1] Warren v. Old Dominion Insurance Co., 465 So.2d 1376 (Fla. 5th DCA 1985); Berkshire Mutual Insurance Co. v. Moffett, 378 F.2d 1007 (5th Cir.1967).