COLUMBIA CASUALTY COMPANY,
Plaintiff–Counter–Defendant–Appellant,

v.

SOUTHERN FLAPJACKS, INC., and
Ann Baldoria,
Defendants–Counter–Plaintiffs–Appellees.

No. 88–5477.

United States Court of Appeals,
Eleventh Circuit.

March 28, 1989.

---

Brian C. Powers, Lake Worth, Fla., Zacarias R. Chacon, Chicago, Ill., for plaintiff-counter-defendant-appellant.

Maurice Rosen, North Miami Beach, Fla., for defendants-counter-plaintiffs-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and MARKEY,* Chief Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we review Florida law regarding prejudgment interest and affirm the district court's ruling that appraisal of an insured loss did not toll the time from which prejudgment interest was due. AFFIRMED.

## FACTS

Columbia Casualty Company (Columbia) issued an insurance policy to the Associated Restaurant Management Group which covered Southern Flapjacks, Inc.'s (Southern) restaurant's property losses from November 8, 1983, to November 8, 1984. Five days prior to the policy's effective date, a fire burned the restaurant. Southern boarded the restaurant to protect the undamaged property. Southern's protection efforts proved unsuccessful, however, because vandals further damaged the restaurant on November 16, 1983.

In compliance with the policy, Southern filed a proof of loss with Columbia for the vandalism damage. Although the policy required Columbia to pay all adjusted claims within thirty days after Southern filed a satisfactory proof of loss, Columbia refused to pay. On March 4, 1985, Columbia formally declined Southern's claim on the ground that Southern had caused the fire and that such actions increased the likelihood of the vandalism.

After Southern threatened to file, Columbia withdrew its declination of Southern's claim and requested an appraisal of the loss pursuant to the policy's terms. Southern agreed to the appraisal, and both parties appointed appraisers. Because the appraisers could not agree to a loss evaluation, the appraisers submitted their differences to a disinterested umpire. The umpire rendered an award of $136,589.77. Southern demanded $47,123.47 in prejudgment interest on the appraisal award.

## PROCEDURAL HISTORY

On October 8, 1987, Columbia filed this declaratory judgment action in the Southern District of Florida. Columbia sought a declaration that it did not owe Southern any prejudgment interest on the appraisal award. Southern counterclaimed for $47,-123.47 in interest. Columbia moved for a judgment on the pleadings arguing that Florida law did not permit an award of interest on the insurance proceeds until after the completed appraisal. Southern counter-moved for a judgment on the pleadings arguing that Columbia had waived its right to an appraisal by denying Southern's initial claim.

On May 2, 1988, the district court awarded Southern its requested prejudgment interest. The district court concluded that Florida law entitled Southern to interest on the insurance proceeds from the time the proceeds became due under the policy. *See Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212, 215 (Fla.1985) (interest makes plaintiff whole from date of loss). Despite the appraisal provision, the court found that the policy obligated Columbia to pay claims within thirty days after Southern filed a proof of loss. *See Nat'l Union Ins. Co. v. Gelfand,* 477 So.2d 28, 29 (Fla. 3d D.C.A.1985) (insured entitled to interest from time proceeds due under the policy).

---

* Honorable Howard T. Markey, Chief U.S. Circuit Judge for the Federal Circuit, sitting by designation.

According to the district court, the appraisers and the umpire merely functioned as a finder of fact similar to a jury, and therefore, the appraisal did not toll the date of the loss.

## CONTENTIONS

Columbia concedes that Florida law entitles an insured to interest beginning on the date the insurer becomes obligated to pay the proceeds under the policy. Columbia, however, contends that the proceeds did not become due until the appraisal's completion because the appraisal provision constituted a condition precedent to Southern's recovery.

Although Southern agrees that interest accrues from the time the amount is due under the policy, Southern contends that the policy obligated Columbia to pay the proceeds thirty days after Southern filed the proof of loss. In the alternative, Southern contends that the district court properly awarded prejudgment interest because a contrary result would violate public policy. Southern also argues that denying prejudgment interest merely because the parties used an appraisal procedure rather than a judicial proceeding to resolve the dispute would undesirably force all disputes into court.

## ISSUE

The sole issue is whether Florida law entitles Southern to prejudgment interest from thirty days after it filed the proof of loss.

## DISCUSSION

■ As both parties acknowledge, Florida has adopted the "loss theory" for awarding prejudgment interest in property damage cases. Under the loss theory, interest begins to run from the time of the wrongful deprivation; neither the merit of a defense nor the certainty of the loss's amount affects the interest award. *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla.1985). Under this theory, the finder of fact merely quantifies the damage and determines a party's liability

for such damages. Regardless of the date on which the finder of fact decides these issues, Florida law entitles such individual to prejudgment interest from the date of the loss. *Argonaut Ins. Co.*, 474 So.2d at 215.

■ As a result, the crucial inquiry involves the determination of the date of the loss. In cases concerning the recovery of insurance proceeds for property losses, the Florida courts have equated the date of the loss with the date that "the proceeds would have been due under the policy." *Biscayne Supermarket, Inc. v. Travelers Ins. Co.*, 485 So.2d 861 (Fla. 4th D.C.A.1986); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Gelfand*, 477 So.2d 28, 29 (Fla. 2d D.C.A. 1985). The dispute between Columbia and Southern, therefore, focuses on when the proceeds became due under this policy.

Columbia argues that the appraisal operates as a condition precedent to recovery, delaying the due date of the proceeds until the appraisal's completion. The district court disagreed with this contention and adopted Southern's position that Columbia became obligated to pay the proceeds thirty days after Southern filed the proof of loss.

We reject Columbia's contention that a Florida appellate court expressly held that an appraisal is a condition precedent to a recovery in *U.S. Fire Ins. Co. v. Franko*, 443 So.2d 170 (Fla. 1st D.C.A.1983). In *Franko*, the court merely stated that "[o]nce the arbitration clause is appropriately invoked, arbitration becomes a condition precedent *to the right of the insured to maintain an action on the policy.*" (emphasis added). Conditioning a party's right to litigate upon compliance with a properly invoked arbitration clause merely enforces a contractual obligation. Delaying a party's access to a judicial forum does not change the date of the loss. *See Argonaut*, 474 So.2d at 215 (once a fact finder determines the amount of loss, interest is awarded from the date of the loss). Thus, *Franko* does not address the critical issue of when the proceeds became due.

The Florida courts and our predecessor court have relied on the particular policy's language to determine when an insurer

became obligated to pay the proceeds. *See Warren v. Old Dominion Ins. Co.*, 465 So.2d 1376 (Fla. 5th D.C.A.1985); *Berkshire Mutual Ins. Co. v. Moffett*, 378 F.2d 1007 (5th Cir.1967). In *Warren,* the policy required the insurer to pay claims "within thirty days after presentation and acceptance of the proof of loss." As a result, the court computed prejudgment interest from thirty days after the insured submitted its proof of loss. *Warren,* 465 So.2d at 1378; *accord Miller v. First Service Corp. of the Florida Keys,* 471 So.2d 1332, 1333 (Fla. 3d D.C.A.1985) ("one of the benefits, upon a recovery, was interest on the amount claimed commencing sixty days from the filing of a proof of loss."). Similarly, in *Moffett,* the former Fifth Circuit concluded that Florida law required the insurer to pay interest from the date that the policy proceeds became due. Because the policy in *Moffett* obligated the insurer to pay claims sixty days after the insured filed a proof of loss, the court awarded prejudgment interest from such date. *Moffett,* 378 F.2d at 1013.

Although the insurance policies in the above cases contained appraisal provisions, the parties resolved their disputes in a judicial forum rather than invoking such appraisal procedures. Emphasizing this distinction, Columbia argues that Florida law computes interest from a different date when the parties resolve their disputes by using the policy's appraisal process because the date of the appraisal award becomes the due date for the proceeds. After examining the relevant Florida decisions, we reject Columbia's contention that dispute resolution through an appraisal, as opposed to litigation, alters the date for awarding interest.

The Florida Supreme Court's definitive statement on interest awards supports our decision. In *Argonaut,* the Court stated that the "[p]laintiff is to be made whole from the date of the loss once *the finder of fact* has determined the amount of the loss and the defendant's liability therefor." *Argonaut,* 474 So.2d at 215 (emphasis added). The date on which the finder of fact renders its decision has no relevance for determining the date of the loss. The apprais-

ers and umpire functioned as finders of fact. We agree with the district court that Florida law does not suggest a different result simply because the finder of fact is an appraiser or umpire, rather than a judge or a jury.

Columbia cites several cases which award prejudgment interest from the date of an appraisal or arbitration award. At first glance, these cases appear to undermine our decision. Further examination, however, reveals that every case cited by Columbia contains one of three critical distinctions which makes such cases inapplicable to the present dispute: (1) the policy language substantially differs; (2) the underlying cause of action differs; or (3) the case involves an arbitration agreement rather than an appraisal provision.

### I. *Insurance Policies Containing Substantially Different Language*

Because several cases which Columbia cites interpret insurance policies with significantly different terms, such decisions have no application to this case. *See, e.g., Aetna Casualty and Surety Co. v. Frank Medina Trading Co.,* 529 So.2d 730, 731 (Fla. 5th D.C.A.1988); *Underwriters Ins. Co. v. Kirkland,* 490 So.2d 149 (Fla. 1st D.C.A.1986). In *Frank Medina,* the Florida appellate court held that the insurer had no obligation to pay for the loss until after the insured filed a proof of loss, and the parties ascertained the loss by one of the methods listed in the policy. *Frank Medina Trading Co.,* 529 So.2d at 731. The insurance policy in *Frank Medina* contained the following provision:

[t]he amount of loss for which this company may be liable shall be payable sixty days after proof of loss ... is received by this company *and* ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided. [Emphasis in original.]

*Frank Medina Trading Co.,* 529 So.2d at 731. The court relied on this language, noting that the policy did not condition the insurer's obligation to pay solely on the

insured's filing of a proof of loss, but rather conditioned such obligation upon the parties' ascertainment of the loss. *Frank Medina Trading Co.,* 529 So.2d at 731.

The *Kirkland* court similarly rejected the argument that the proceeds became due sixty days after the insured filed the proof of loss because the policy did not make the proceeds due upon the filing of the loss. *Kirkland,* 490 So.2d at 154. In *Kirkland,* the policy explicitly delayed the insurer's obligation to pay the proceeds until after the insurer received a proof of loss "*and:* (a) reache[d] an agreement with its insured, or (b) there [was] an entry of a final judgment, or (c) there [was] a filing of an appraisal award with the insurer." *Kirkland,* 490 So.2d at 154 (emphasis in original). Thus, in *Kirkland* and *Frank Medina,* the courts refused to compute interest from sixty days after the insured filed a proof of loss because the policies conditioned the insurer's obligation to pay the proceeds on more than such filing.

In contrast to these cases, the district court found that the Columbia policy obligated Columbia to pay Southern thirty days after Southern filed a proof of loss. We agree with this interpretation of the Columbia policy. The Columbia policy provides: "All adjusted claims shall be paid to the Assured within thirty (30) days after filing of satisfactory proof of loss." The policy does not condition Columbia's obligation to pay upon the ascertainment of the loss or the rendering of an appraisal award.[1]

We additionally note that our decision would not differ if Columbia had requested an appraisal within thirty days even though a Florida decision seems to suggest that the request of an appraisal within thirty or sixty days, depending on the policy's terms, would toll the running of interest until the rendering of an appraisal decision. *Bear v. New Jersey Ins. Co.,* 138 Fla. 298, 189 So. 252 (1939). In *Bear,* the court held that the insurer owed prejudgment interest from sixty days after the insurer admitted liability because such admission substituted for the filing of a proof of loss. *Bear,* 189 So. at 252. In reaching this decision, the court relied on the insurer's failure to request an appraisal within sixty days after such admission, implying that an appraisal would have changed the date for awarding interest.

As in *Kirkland* and *Frank Medina,* the policy in *Bear* differed significantly from the present policy. The terms of the *Bear* policy expressly conditioned the insurer's obligation to pay upon the rendering of an appraisal award if the insurer requested such appraisal within sixty days after the filing of a proof of loss. *Bear,* 189 So. at 253 ("the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by

---

**1.** We recognize that the policy contains contradictory language; however, the policy resolves the conflict to support our interpretation. The policy consists of two documents: the general insurance contract and the specific contract which applies only to Southern and Columbia. The general contract provides:

> The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by filing with this Company of an award as herein provided.

This language contradicts the specific contract's provision which provides in total: "All adjusted claims shall be paid to the Assured within thirty (30) days after filing of satisfactory proof of loss." The policy, however, expressly provides that the specific contract controls to the extent it conflicts with the basic contract. First, the specific contract contains the following provision:

> XXII CONFLICT OF WORDING
>
> The Conditions contained in this form [the specific contract] shall supersede those of the basic contract to which this form is attached whenever the same may conflict.

Second, the front page of the policy has typed in capital bold print the following limitation of the 165-line basic contract's application:

> **THE 165 LINES CONTAINED HEREIN SHALL APPLY TO THE EXTENT THEY ARE NOT SUPERCEDED BY ANY FORM THAT MAY BE ATTACHED TO THIS POLICY.**

Thus, the specific contract controls. As mentioned above, the specific contract obligates Columbia to pay the proceeds thirty days after Southern files a proof of loss.

appraisers when appraisal has been required."). The court specifically interpreted the policy as requiring the insurer to request the appraisal within sixty days. Under such a policy, the court necessarily noted that the parties did not request an appraisal. *See also English and American Ins. Company v. Swain Groves, Inc.,* 218 So.2d 453, 457 (Fla. 4th D.C.A.1969) (citing *Bear* when noting that no appraisal requested before awarding interest from sixty days after admission of liability because policy conditioned insurer's duty to pay upon ascertainment of the loss).

As stated above, the Columbia policy neither conditions payment upon an appraisal nor limits the period for requesting an appraisal. Thus, we hold that Columbia's invocation of the appraisal process did not alter Columbia's obligation to pay Southern within thirty days after Southern filed a proof of loss.

II. *Cases with Different Underlying Causes of Action*

The Florida courts apply different rules for computing interest, depending on the underlying cause of action. *See Parker v. Brinson Constr. Co.,* 78 So.2d 873, 875 (Fla.1955) (distinguishing date for recovery of interest in contract and personal injury cases); *see Moffett,* 378 F.2d at 1013 (breach of contract and tort decisions not controlling in case awarding prejudgment interest for failure to pay under an insurance policy); *see also Swain Groves,* 218 So.2d at 457 (in actions *ex contracto* it is proper to allow interest from the date the debt was due). In cases involving insurance claims for property losses, the Florida courts award interest from the due date for the proceeds as specified in the policy. *Gelfand,* 477 So.2d at 29. The Florida courts, however, award interest from the entry of judgment in personal injury cases. *Southeast Title and Ins. Co. v. Austin,* 202 So.2d 179, 181 (Fla.1967) ("consistent rule of our decisions den[ies] interest in personal injury cases until entry of judgment."); 32 Fla.Jur.2d, Interest and Usury § 7 (1981). Similarly, the Florida courts have consistently refused to award prejudgment interest in uninsured motorists'

cases. *Austin,* 202 So.2d at 181 (rule denying interest until entry of judgment in personal injury cases applies to uninsured motorists insurance proceedings because although based on contract of insurance, the case essentially involves the recovery of tort damages). Because a party only has a right to interest from the entry of judgment in these cases, when the parties arbitrate their dispute rather than litigating it, interest begins to run from the arbitration award. *See Austin,* 202 So.2d at 181; *Haskell v. Forest Land and Timber Co.,* 426 So.2d 1251 (Fla. 1st D.C.A.1983) (acknowledging general rule that date of arbitration award constitutes date of entry of judgment in cases where court computes interest from the date of the entry of judgment).

Several of the Florida decisions which Columbia cites as computing interest from the arbitration award involve either tortious personal injury claims or uninsured motorist claims. *See State Farm Mutual Automobile Ins. Co. v. Napoli,* 380 So.2d 1325 (Fla. 4th D.C.A.1980) (interest computed from date of arbitration award in uninsured motorist case); *Southeastern Fidelity Ins. Co. v. USF & G,* 316 So.2d 639 (Fla. 4th D.C.A.1975) (citing *Austin* to hold interest computed from arbitration award in uninsured motorist claim). Thus, these cases do not undermine our decision because they involve different causes of action for which Florida law has explicitly applied different rules for computing interest.

III. *Cases Involving Arbitration Rather Than Appraisal*

The final case which Columbia cites to support its position critically differs from this dispute. *See Safeco Ins. of America v. Goldberger,* 447 So.2d 462 (Fla. 4th D.C.A.1984). In *Goldberger,* the court concluded that the Florida Arbitration Code prohibited it from awarding interest for the time predating the arbitration award because the arbitrators expressly refused to award interest for such period. *Goldberger v. Hofco, Inc.,* 422 So.2d 898, 900 (Fla. 4th D.C.A.1982). The *Goldberger* decision,

however, involved an arbitration agreement rather than a mere appraisal.

Although the courts loosely interchange the terms "appraisal" and "arbitration," Florida law expressly distinguishes between a limited agreement to appraise the amount of the loss and a general agreement to submit to arbitration. *Preferred Ins. Co. v. Richard Parks Trucking Co.,* 158 So.2d 817 (Fla. 2d D.C.A.1963); *Hanover Fire Ins. Co. v. Lewis,* 28 Fla. 209, 10 So. 297 (1891). The Florida Arbitration Code applies only to arbitration agreements, not to appraisals. *Lewis,* 10 So. at 302; 31 Fla.Jur.2d, Insurance § 891 (1981). A provision for arbitrating a disputed amount constitutes an appraisal agreement, rather than an arbitration agreement. *Preferred Ins. Co.,* 158 So.2d at 819–21; *Lewis,* 10 So. at 302; 31 Fla. Jur.2d, Insurance § 891 (1981). Because the Columbia policy provision constitutes an appraisal provision, the *Goldberger* decision and the statutory arbitration rules do not apply to our case.

Consequently, after examining the cases which Columbia cites, we find that such decisions do not compel us to conclude that Florida law limits prejudgment interest until an appraisal decision is rendered. Rather, we hold that the district court properly awarded interest from thirty days after Southern filed its proof of loss because such date constitutes the date of loss in this case.

## CONCLUSION

For the reasons discussed, we hold that Florida law entitles Southern to prejudgment interest on its appraisal award beginning from thirty days after it filed its proof of loss with Columbia.

AFFIRMED.